## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**CENTER FOR BIOLOGICAL DIVERSITY,**          )
                                              )
                    **Plaintiff,**            )
                                              )
**v.**                                        )          **Case No: 05-cv-1045 (RMC)**
                                              )
**CARLOS GUTIERREZ,**                         )          **ECF**
**Secretary, Department of Commerce, et al.,**)
                                              )
                    **Defendants.**           )
_____)

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(1) and 56, Defendant Department of Commerce respectfully moves the Court to dismiss or, in the alternative, for summary judgment.  In support of this Motion, Defendant respectfully refers the Court to the attached Memorandum of Points and Authorities, Statement of Materials For Which There is No Genuine Dispute, the Declaration of Ms. Beverly Smith, and the *Vaughn* Index.

Dated: October 7, 2005                        Respectfully Submitted,


                                              _____/s/_____
                                              KENNETH L. WAINSTEIN, D.C. BAR #451058
                                              United States Attorney


                                              _____/s/_____
                                              R. CRAIG LAWRENCE, D.C. BAR #171538
                                              Assistant United States Attorney
                                              _____/s/_____
                                              JOHN C. TRUONG, D.C. BAR #465901
                                              Assistant United States Attorney
                                              555 Fourth Street, N.W.
                                              Washington, D.C.  20530
                                              (202) 307-0406
                                              Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CENTER FOR BIOLOGICAL DIVERSITY,   )
   )
         Plaintiff,   )
   )
         v.   )     Case No: 05-cv-1045 (RMC)
   )
CARLOS GUTIERREZ,   )     ECF
Secretary, Department of Commerce, et al.,   )
   )
         Defendants.   )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I     Introduction**

      Plaintiff Center for Biological Diversity (CBD) brings this lawsuit under the Freedom of

Information Act (FOIA), 5 U.S.C. § 552, seeking certain documents from the National Marine

Fisheries Services (NMFS), a component of Defendant Department of Commerce.  After

Defendant responded to Plaintiff's three separate FOIA requests and their appeals, Plaintiff then

amended its complaint alleging that Defendant improperly invoked FOIA Exemptions 6 and 5

for withholding certain documents in full or in part.  Plaintiff also alleges that Defendant violated

the Administrative Procedure Act.

      Plaintiff's Amended Complaint (A.C.) lacks merits as Defendant has provided Plaintiff

with all non-exempt documents.  More importantly, as explained in the Declaration of Beverly

Smith (Gov. Exh. A) and the *Vaughn* Index (Gov. Exh. B), Defendant has appropriately applied

Exemption 5 to withhold in full or in part twenty-two documents that contain predecisional and

deliberative information.  As for Exemption 6, the issue is not properly before the Court because Plaintiff failed to appeal that issue timely.  As there is no genuine dispute of any material facts in this case, the Court should enter summary judgment in favor of Defendants.

## II.    Background

This case involves three FOIA requests for documents submitted by Plaintiff to NMFS.  Despite some delays, all of the non-exempt responsive documents were released to Plaintiff.  In the Amended Complaint, Plaintiff claims that, due to these delays, Defendant violated FOIA and the Administrative Procedure Act (APA) (5 U.S.C.§ § 701 et seq.).  Plaintiff also challenges the withholding of certain documents under Exemption 5.

Plaintiff served its first FOIA request on August 27, 2004, to NMFS,[1] seeking "comments submitted during the public comment period pertaining to the imperiled coral species."  A.C. at ¶ 51.  Then, on October 1, 2004, Plaintiff filed two additional FOIA requests, the first sought specific information from the files of Ms. Jennifer Ann Moore.  A.C. at ¶ 61, Smith Decl. at ¶ 2, 5.  Its second October 1, 2004, FOIA request sought documents on how the NMFS convened a Biological Review Team.  A.C. at ¶68-69; Smith Decl. at ¶ 9.[2]

On October 15, 2004, Defendant responded to Plaintiff's August 27, 2004, FOIA request and produced 223 pages of records.  Gov. Exh. C.  Defendant withheld only portions of three e-

---

[1]    The NMFS is a component of the National Oceanic and Atmospheric Administration (NOAA), which in turn is a component of Defendant Department of Commerce.  Smith Decl. at ¶ 1.

[2]    On October 1, 2005, Plaintiff simultaneously submitted two separate FOIA requests.  Smith Decl. at ¶¶ 4, 9.  These FOIA requests were assigned case numbers: 2004-000593 and 2004-594.  Id.  These two FOIA requests will be identified as "October 1 FOIA-593" and "October 1 FOIA-594."

mails under Exemption 6.  Id.  On Nvember 15, 2004, Plaintiff filed an administrative appeal

from the response to the August 27, 2004 FOIA request.  Gov. Exh. D.  Defendant rejected the

appeal as untimely.  Smith Decl. at ¶ 2.

       On January 19, 2005, Defendant responded to Plaintiff's first October 1, 2004 FOIA

(October 1 FOIA-593) request.  Gov. Exh. E.  On February 16, 2005, Plaintiff appealed that

response.  Gov. Exh.  F.  Subsequently, on July 8, 2005, Defendant responded to the appeal.

Gov. Exh. G.  As for Plaintiff's second October 1, 2004 FOIA request (October 1 FOIA -594),

Defendant responded to it on October 19, 2004.  Gov. Exh. H.  Plaintiff then appealed the

response on November 16, 2004.  Gov. Exh.  I.  Defendant responded to the appeal on July 29,

2005.  Gov. Exh. J.  As described in the Declaration of Beverly J. Smith, in each of Defendant's

initial responses or responses to Plaintiff's appeals, Defendant fully provided Plaintiff with non-

exempt documents.  Plaintiff, however, was not satisfied with Defendant's responses and filed

this lawsuit.

## III.     Standard of Review

### A.     Motion to Dismiss For Lack of Subject Matter Standard

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1),

plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  Rasul v.

Bush, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing McNutt v. Gen. Motors Acceptance Corp.,

298 U.S. 178, 182-83 (1936)).  Moreover, the court is not limited to the allegations contained in

the complaint.  Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other

grounds, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the

court may consider materials outside the pleadings.  Herbert v. Nat'l Acad. of Sciences, 974 F.2d

192, 197 (D.C. Cir. 1992).

### B.    Summary Judgment In FOIA Cases

FOIA cases are typically decided on motions for summary judgment.  See Cappabianca v. Commissioner, United States Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).[3]  To be entitled to summary judgment, the agency must prove that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure.  Weisberg v. United States Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. United States Department of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be granted solely on the basis of agency affidavits [or declarations] if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish that the documents are within the FOIA exemption category; the district court need look no further." Citizens Commission on Human Rights v. FDA, 45 F.3d at 1329; Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991).  See also Hayden, supra, 608 F.2d at 1387; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

---

[3]  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency/Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

These declarations or affidavits (singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S.Ct. 1564 (1974).[4]  There is no set formula for a <u>Vaughn</u> index.  "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." <u>Kay v. FCC</u>, 976 F.Supp. 23, 35 (D.D.C. 1997).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v. IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987). <u>See also</u> <u>Keys v. United States Department of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987). When the pleadings, supplemented by the affidavits, declarations, or <u>Vaughn</u> Index show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. <u>Perry v. Block</u>, 684 F.2d 121 (D.C. Cir. 1982).

**C.      Summary Judgment (Fed.R.Civ.P. 56)**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is required when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 322 (1986); <u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Any factual assertions contained in affidavits and other evidence in support of

---

[4]  "A <u>Vaughn</u> index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d at 1326.  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the nonmoving party through affidavits or other documentary evidence. Fed. R. Civ. P. 56(e).

While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." High Tech Gays v. Defense Industrial Security Clearance Office, 895 F.2d 563, 574, reh'g denied, 909 F.2d 375 (9th Cir. 1990) (citing Celotex v. Catrett, 477 U.S. 317, 331 (1986)).

## IV.     Argument

### A.     First Claim:   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's August 27, 2004 FOIA Request (August 27 FOIA Request).

In Claim One, Plaintiff alleges that Defendant improperly invoked Exemption 6 to withhold responsive documents. A.C. at ¶¶ 78-80. This issue is not properly before the Court because Plaintiff's appeal was untimely, and thus Plaintiff did not exhaust its administrative remedies.

Exhaustion of administrative remedies is a well-established doctrine in administrative law that provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." McKart v. United States, 395 U.S. 185, 193 (1969) (citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938)). "It goes without saying that exhaustion of administrative remedies is required in FOIA

6

cases. .... 'exhaustion of such [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review.'" Dettmann v. U.S. Department of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986) (quoting to Stebbins v. Nationwide Mutual Insurance Co., 757 F.2d 364, 366 (D.C. Cir. 1985)).   See also, Spannaus v. Department of Justice, 824 F.2d 52, 58 (D.C. Cir. 1987); In re motion to Compel filed by Steele, 799 F.2d 461, 465-66 (9th Cir. 1986); Stebbins v. Nationwide Mut. Ins. Co., 757 F.2d 364, 366 (D.C. Cir. 1985).

Indeed, where a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full administrative exhaustion, his lawsuit is subject to ready dismissal for lack of subject matter jurisdiction.  See, e.g., Dettmann v. Department of Justice, 802 F.2d 1472, 1477 (D.C. Cir.  1986); Hymen v. Merit Sys. Protection Bd., 799 F.2d 1421, 1423 (9th Cir. 1986); Brumley v. Department of Labor, 767 F.2d 444, 445 (8th Cir. 1985).

A FOIA requester fails to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under the FOIA, including failure to comply with fee requirements and failure to administratively appeal a denial of information.  See, e.g. Ogelsby v. U.S. Dept. of the Army, 920 F.2d 57 (D.C. Cir. 1990).  Indeed, "a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's responses."  Wilbur v. CIA, 273 F. Supp.2d 119, 123 (D.D.C. 2003).

Here, Plaintiff simply failed to file its appeal to Defendant's response timely.  Under Defendant's FOIA regulations, "the requester may file a written appeal or an electronic appeal, which *must be received* by the Office of General Counsel during normal business hours

(*8:30a.m. to 5p.m., Eastern Time, Monday through Friday*) within thirty calendar days" of the final response.  15 C.F.R. § 4.10(a) (emphasis added); see also 69 Fed. Reg. 49784 (Aug. 12, 2004).  "Written or electronic appeal *arriving after normal business hours will be deemed received on the next normal business day*."  15 C.F.R. § 4.10(a) (emphasis added).

In response to Plaintiff's August 27 FOIA Request, on October 15, 2004, Defendant informed Plaintiff that it searched and found 223 pages of records.  Gov. Exh. C.  Defendant then provided Plaintiff with all of the documents, except for portions of three e-mail records that Defendant withheld pursuant to FOIA Exemption 6.  Id.  Defendant also advised Plaintiff that it must file any appeals within 30 calendar days of that response.  Id. More importantly, Defendant also provided Plaintiff with a citation to the federal regulation that governs the timing of the filing of any appeals.  Id.

Subsequently Plaintiff e-mailed its appeal to Defendant on November 15, 2004, at 2:12pm Pacific Standard Time.  See A.C. at ¶ 58, Gov. Exh. D.  2:12pm Pacific Standard Time is 5:12pm Eastern Standard Time.  To be timely, the appeal must be received within 30 days of October 15, 2004 (the date of the agency response to the FOIA request) and within the normal business hours (8:00am to 5:00pm Eastern Time).  15 C.F.R. § 4.10(a).  Plaintiff's e-mail appeal arrived after 5:00 p.m. Eastern Time (at 5:12pm Eastern Time) and, therefore it was not received officially until the next business day, on November 16, 2004.  15 C.F.R. § 4.10(a) (requiring that "electronic appeal *arriving after normal business hours will be deemed received on the next normal business day*.").  Plaintiff's appeal was one-day late. U.S. v. Locke, 471 U.S. 84 (1985) (filing even one-day late is too late).  Consequently, Defendant rejected Plaintiff's e-mail appeal as untimely.  Smith Decl. at ¶ 2.

Apparently, Plaintiff does not dispute that its e-mail appeal was late.  Rather, Plaintiff only complains that the 5p.m. deadline existed only fifteen days before its appeal was due and that it did not have notice of Defendant's "normal business hours" requirement.  See A.C. at ¶¶ 58-59.  Moreover, Plaintiff does not allege that Defendant violated any statute, including the APA, for determining that Plaintiff's e-mail appeal was untimely.  Plaintiff merely alleges that Defendant improperly invoked Exemption 6 for portions of withholding three e-mail records. See A.C. ¶¶ 78-80.

Under these facts, the Court does not have subject matter over Plaintiff's August 27 FOIA Request because Plaintiff did not timely appeal Defendant's final determination on that FOIA request.  See Wilbur, 273 F. Supp.2d at 123 (holding that "[i]f a requester did not timely appeal through the agency's internal processes, a court is deprived of subject-matter jurisdiction to review any lawsuit and must dismiss.").  Accordingly, Plaintiff's August 27 FOIA claim (First Claim) must be dismissed for lack of subject matter jurisdiction.

**B.      Second and Third Claims: Defendant Properly Applied Exemption 5**

The two remaining FOIA requests (October 1FOIA – 593 and October 1 FOIA-594) sought documents related to Carribbean Acroporids contained in Ms. Jennifer Ann Moore's files, and for all documents received by NMFS in selecting members for a Biological Review Team that reviewed Plaintiff's petition to list *Acropora* palmata (Elkhorn Coral), A. Cericornis (Staghorn Coral), and A. Prolifera (Fused-Staghorn Coral) as endangered species under the Endangered Species Act.[5]  With regard to these two FOIA requests, Defendant properly applied

_____

[5]The Endangered Specie Act ("ESA") provides a means for endangered or threatened species to be conserved.  16 U.S.C. § 1531(b).  The ESA divides responsibilities for protection of

Exemption 5 to withhold twenty-two documents (five documents withheld in their entirety and 17 withheld in part). Smith Decl. at ¶ 3. The twenty-two documents are described in detail in the <u>Vaughn</u> Index, attached as Government Exhibit B. Each of these documents is discussed *infra*. Sections IV.B(i) and (ii).

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party. . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This language has been construed to exempt those documents that routinely would be unavailable to an agency's opponent in a civil discovery context and to incorporate all evidentiary privileges that would be available to a litigant in that context. <u>See</u> <u>Dep't of Interior v. Klamath Water Users Protective Association</u>, 532 U.S. 1, 8 (2001); <u>United States v. Weber Aircraft Corp.</u>, 465 U.S. 792, 799 (1984); <u>NLRB v. Sears Roebuck & Co.</u>, 421 U.S. 132, 149 (1975); <u>Rockwell Internat'l Corp. v. U.S. Dep't of Justice</u>, 235 F.3d 598, 601 (D.C. Cir. 2001). This section of the FOIA covers the attorney-client privilege, the attorney work product doctrine

---

endangered or threatened species between the Commerce Department and Interior Department. A.C. at ¶ 43. The Commerce Department is responsible for marine life. <u>Id</u>. Within the Commerce Department, the NMFS is responsible for endangered or threatened marine species. <u>Id</u>. NMFS is a component of the National Oceanic and Atmospheric Administration ("NOAA"). Smith Decl. at ¶ 1. NOAA is also part of the Commerce Department. <u>Id</u>.

*Acropora palma* (Elkhorn Coral), *Acropora cervicornis* (Staghorn Coral), and *Acropora prolifera* (Fused-Staghorn Coral) are endangered coral species that risk extinction. Id. at ¶ 46. Over the past three decades, these corals suffered a severe decline to disease, thermal induced bleaching, physical destruction from storms, predation, competition, and human activities in general. <u>Id</u>. In March 2004, Plaintiff submitted a formal petition to NMFS to initiate the ESA process for listing these corals as endangered or threatened. Id. at ¶ 47. The petition provided information on the threats to these corals and explained the bases for giving these corals protections. <u>Id</u>.

Following a public comment period, NMFS concluded that *Acropora palma* (Elkhorn Coral) and *Acropora cervicornis* (Staghorn Coral), two of the three species petitioned by Plaintiff, warranted listing as threatened. A.C. at ¶ 49.

and the executive "deliberative process privilege that protects candid internal discussions of legal or policy matters." Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).  Records created by government agencies and circulated within the agency, as is the information withheld under Exemption 5 in this case, clearly meet this threshold.  In the instant case, Exemption 5 was asserted by Defendants to protect information that falls within the deliberative process.

The purpose of the deliberative process privilege, incorporated within Exemption 5, is to protect the "quality of agency decisions."  Klamath Water Users, 532 U.S. at 8-9; Sears, Roebuck & Co., 421 U.S. at 151.  The policy underlying this privilege is to encourage open, frank discussions of policy matters between subordinates and supervisors, to protect against premature disclosure of proposed policies before they become final, and to protect against public confusion by disclosing reasons and rationales that were not in fact the ultimate grounds for the agency's action.  See, e.g., Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982)(citing Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 772-3 (D.C. Cir. 1978)); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  The privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  American Federation of Government Employees v. Dep't of Commerce, 907 F.2d 203, 208 (D.C. Cir. 1990) (citing Coastal States, 617 F.2d at 866)).  The deliberative process privilege also protects the process by which a "draft" document becomes a "final" document.  See, e.g., Marzen v. HHS, 825 F.2d 1148, 1155 (7th Cir. 1987) ("[E]xemption protects not only the opinions, comments and recommendations in the draft, but also the process itself."); Pies v. IRS, 668 F.2d

11

1350, 1353-54 (D.C. Cir. 1981).

The deliberative process privilege protects information that is both predecisional and deliberative.  See Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  A document is predecisional if "it was generated before the adoption of an agency policy."  Coastal States, 617 F.2d at 866.  A document is deliberative if "it reflects the give-and-take of the consultative process."  Id.  The government has the burden of proving that the information in question satisfies both requirements.  Id.  However, the Supreme Court has emphasized that the existence of predecisional documents does not depend on the agency's ability to identify a specific decision with regard to the document prepared.  See Sears, Roebuck & Co., 421 U.S. at 151 n.18; see also Schell v. HHS, 843 F.2d 933, 941 (6th Cir. 1988).  The deliberative process privilege applies as long as the document is generated as part of a continuing process of agency decisionmaking.  See, e.g., Ashley v. United States Dep't of Labor, 589 F. Supp. 901, 908-09 (D.D.C. 1983) (holding that documents containing agency self-evaluations need not be shown to be part of a clear process leading up to an "assured" final decision so long as the agency can demonstrate that documents were part of some deliberative process).

Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  Sears, Roebuck & Co., 421 U.S. at 150 (internal citations and quotation marks omitted).  Thus, the exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process.  See Coastal States, 617 F.2d at 866.

> **(i)** **Second Claim: Plaintiff's First October 1, 2004 FOIA Request (October 1FOIA – 593)**.

Plaintiff alleges that Defendant improperly invoked Exemption 5 in withholding in full or in part certain documents responsive to Plaintiff's October 1FOIA – 593.  A.C. at ¶ 82-84.  This FOIA request sought documents from Ms. Jennifer Anne Moore's files.  A.C. at ¶ 61.[6]  Plaintiff claims that these documents would shed light on how NMFS understand the corals.  Id.  In response to Plaintiff's October 1FOIA – 593, on January 19, 2005, Defendant provided Plaintiff with 397 pages of records.  Gov. Exh. E.  Defendant withheld sixteen documents in whole or in part under Exemption 5.  Smith Decl. at ¶ 6.

Not satisfied, Plaintiff appealed Defendant's response.  After further review, Defendant produced another document in full and portions of two additional documents.  Smith Decl. at ¶ 6.  Of the fifteen remaining documents, Defendant withheld one document in full as it contained attorney-client communication between a NMFS researcher and a NOAA attorney.  Id. at ¶¶ 6,7; see also *Vaughn* Index Item No. 1.

As for the remaining fourteen documents, Defendant withheld four documents in full as they contain preliminary recommendations from NOAA employees and consultants. Vaughn Index Item Nos. 2-5; Smith Decl. at ¶ 8.  Defendant then withheld the other ten documents in part. Smith Decl. at ¶ 8; Vaughn Index Item Nos. 6-15.  Each of these documents is discussed below.

Vaughn Index Item No. 2 is a May 25, 2001 document containing four pages, withheld in full.  It is a draft document titled, "Assessment of Endangered Species Act (ESA) Candidate Acroporid Coral Populations in U.S. Waters."  This document represents preliminary

---

[6]    Plaintiff apparently does not challenge Defendant's search adequacy in response to this FOIA request.  See A.C. 61-67, 82-84.

13

recommendations by NOAA employees for NOAA decisionmakers, which were part of Defendant's deliberations concerning decisions on ESA listings.  <u>See</u> Vaughn Index Item No. 2. The factual information in this document constitute an integral part of the deliberations undertaken by Defendant in determining how to structure the ESA assessment of candidate acroporid populations.  As a draft, it is a predecisional, deliberative document and its release would discourage open, frank discussions on how NOAA should develop and implement a program to inventory, assess, and monitor U.S. coral reef ecosystems.  <u>Id</u>.

Vaughn Index Item No. 3 is a one-page document dated November 12, 2003.  This document is titled, "Overview-Atlantic *Acropora* Status Review Suggested Format," and it was prepared by a NOAA employee, attached to an e-mail from Andy Bruckner to Jennifer Jacukiewicz, cc: to Stephania Bolden, all of whom were NOAA employees.  <u>See</u> Vaughn Index Item No. 3.  This page consists of preliminary recommendations by NOAA employees for NOAA decisionmakers, which were part of Defendant's deliberations concerning decisions on how to structure the Atlantic *Acropora* status review and what should be included in the process. <u>Id</u>.  The factual information in this document relates to Defendant's determination on how to structure the ESA assessment of candidate acroporid populations.  <u>Id</u>.  Like Item No. 2, this is a draft document and its release would discourage open, frank discussions on how NOAA should develop and implement a program to inventory, assess, and monitor U.S. coral reef ecosystems.

Vaughn Index Item No. 4 is an eighteen page attachment, withheld in whole.  This document is titled,  "Atlantic Acropora Status Review."  It was drafted by a NOAA employee, attached to an e-mail from Stephania Bolden to Andy Bruckner, cc: to Jennifer Jacukiewicz, all of whom were NOAA employees.  <u>See</u> Vaughn Index Item No. 4.  The content of this document

consists of preliminary recommendations by NOAA employees for Defendant's deliberation on ESA listings.  Id.  This document deals with Defendant's determination of how to structure the ESA assessment of candidate acroporid populations. Id.

Vaughn Index Item No. 5 is an undated 36-page attachment, which was withheld in full. This document was part of a February 11, 2004 e-mail from Stephania Bolden to  Jennifer Jacukiewicz, Andy Bruckner, Margaret W. Miller, Dana Williams, Ron Hill, Paul Sammarco, Caroline Rogers, Richard Curry, cc: to David Bernhart, all of whom were NOAA employees or consultants.  See Vaughn Index Item No. 5.  The document consists of preliminary recommendations by NOAA employees and consultants provided to Defendant's decisionmakers who dealt with ESA listings.  Id.  These NOAA consultants were providing opinions and recommendations to NOAA and had no personal stake in the outcome of the decisionmaking process or the final decision.   Id.; see also Smith Decl. at ¶ 8.

Vaughn Index Item Nos. 6 -15 are documents that were withheld in part as portions of those documents contains preliminary recommendations by NOAA employees and consultants to decisionmakers, who made decisions on how to structure the Atlantic *Acropora* status review and what should be included in the process.  See Vaughn Index Item Nos. 6-15.  These consultants did not have any personal interest in the outcome of Defendant's decisionmaking process or the final decision on this issue.  Id.; Smith Decl. at ¶ 8.[7]  The withheld portions are predecisional and deliberative.  Their release would discourage open, frank discussions on how NOAA should go about developing and implementing a program to inventory, assess, and

---

[7]    Only *Vaughn* Index Item Nos. 5,6,12-14 include recommendations from NOAA consultants.  Smith Decl. at ¶ 8.

monitor U.S. coral reef ecosystems. Smith Decl. at ¶ at 8.

The withheld portions of these documents consist of internal, NOAA predecisional and deliberative opinions and recommendations on (i) whether, *inter alia*, Staghorn coral, Elkhorn coral, and other coral species should be designated as threatened or endangered species for placement on the Endangered Species list, (ii) how to structure the deliberations, (iii) what to take into account, and (iv) what should go into a final decision. Since the withheld portions are clearly predecisional, in that they are part of the deliberative process, a release of these portions will be harmful to that process and confuse the public. Russell, 682 F.2d at 1048. Accordingly, the Court should grant summary judgment in Defendant's on these withheld documents (Item Nos. 1-16) as they are properly exempted from disclosure under FOIA Exemption 5.

### (ii)    Third Claim: Plaintiff's Second October 1, 2005 FOIA Request (October 1 FOIA – 594).

Similar to its Second Claim, Plaintiff's Third Claim alleges that Defendant improperly withheld certain portions of responsive documents to Plaintiff's October 1 FOIA – 594. A.C. ¶¶ 86-87. In this FOIA request, Plaintiff sought documents on how NMFS convened the Biological Review Team (BRT) to assess the biological status of the coral species. A.C. at ¶ 68; Smith Decl. at ¶ 9. In response to October 1 FOIA – 594, Defendant conducted a comprehensive search and produced documents to Plaintiff at various times. Smith Decl. at ¶¶ 9-16; see also Gov. Exh. H. In fact, Defendant released to Plaintiff in full a total of 46 pages of documents. Smith Decl. at ¶ 12.

Defendant only withheld portions of seven documents (consisting of 12 pages) under Exemption 5. Smith Decl. at ¶¶ 12,15. The withheld information consists of preliminary

recommendations by NOAA employees. The information was part of the deliberations in the decisionmaking process on how to select and establish a the BRT. This entire process was part of the Defendant's status review. Id. at ¶15. These seven documents are discussed below.

Vaughn Index Item Nos. 16-18, 21-22 are internal e-mails between and among NOAA employees to various decisionmakers, who participated in the deliberation on how to select and establish a BRT. These e-mails were only withheld in part. See Vaughn Index Item Nos. 16-18, 21-22.[8] The withheld portions are predecisional and deliberative. Their release would discourage open, frank discussions on how NOAA should establish a BRT. Id., see Smith Decl. at ¶ 16.

As for Vaughn Index Item Nos. 19-20, these are also internal e-mails pertaining to the deliberation on selecting the BRT. See Vaughn Index Item Nos. 19-20. However, these two documents also contain preliminary recommendations from NOAA consultants. Id.; Smith Decl. at ¶ 15. As such, these documents are predecisional and should be protected from disclosures. Smith Decl. at ¶ 16.

Under these circumstances, the Court should grant summary judgment in Defendant's favor as Defendant has shown that it properly invoked Exemption 5 to withhold only those portions of responsive documents that qualify for exemption.

**C.      Fourth and Fifth Claims:      Defendant Timely Responded to Plaintiff's FOIA Requests.**

In its Fourth and Fifth Claims, Plaintiff alleges that Defendant delayed and failed to

_____

[8]      Certain portions of Vaughn Index Item No. 18 were withheld as non-responsive. Smith Decl. at ¶ 15.

respond to its several FOIA requests within the statutory period. A.C. ¶¶ 89-92. Plaintiff claims that the delay or failure to timely respond violated the Administrative Procedure Act (APA). Id. Other than the alleged violation of the APA, Plaintiff has not alleged that it suffered any harm. In fact, except for the twenty-two documents discussed herein, Defendant provided Plaintiff with all responsive documents. See Smith Decl. at ¶¶ 3-16.

In any event, FOIA provides that agencies may be permitted to process FOIA requests beyond the time allotted by statute if the agency can show that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 522(a)(6)(C)(i). As defined by this Circuit in Open America, "exceptional circumstances" exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976).[9] Courts in this Circuit have interpreted this "exceptional circumstances" provision as excusing any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first-out basis. Open Am., 547 F.2d at 616; Ohaegbu v. Fed.

---

[9]    In the Electronic Freedom of Information Act Amendments of 1996, however, Congress made clear that "exceptional circumstances" do not include delays stemming "from a predictable agency workload of requests ... unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 522(a)(6)(C)(ii). Open America represents the law of the Circuit and has been applied to FOIA cases since the 1996 amendments." Emerson v. Cent. Intelligence Agency, 1999 U.S. Dist. LEXIS 19511, at *4 (D.D.C. Dec. 15, 1999). But see Donham v. Dep't of Energy, 192 F.Supp.2d 877, 880 (S.D.Ill. 2002) (suggesting indirectly that the 1996 amendments superseded the Open America standard).

Bureau of Investigation, 936 F.Supp. 7, 8 (D.D.C.1996) (citing Kuffel v. Bureau of Prisons, 882

F.Supp. 1116, 1127 (D.D.C.1995).

      In this case, as explained in the Smith Declaration, Defendant diligently processed

Plaintiff's multiple FOIA requests and promptly released documents to Plaintiff as they became

available.  See Smith Decl. at ¶12.  Defendant was diligent despite the fact it was saddled with a

high volume of requests.  Id.  Specifically, thus far in fiscal year 2005, NMFS has received 213

FOIA requests and NOAA received twice that volume at 461 FOIA requests.  Id.  In addition,

NMFS Headquarters had to process other FOIA requests to which they are not directly assigned.

Id.  By way of an illustration, at the time that Defendant processed Plaintiff's third FOIA request

(October 1 FOIA-00594), it had 24 open and active FOIA requests that Defendant had to

process.  Id.  Given these facts, Defendant did not act arbitrarily or abuse its discretion for not

providing Plaintiff with documents or responses within the statutory period.

      Moreover, Plaintiff's untimeliness claims are also moot because Defendant has already

produced non-exempt documents.  FOIA confers courts with "jurisdiction to enjoin the agency

from withholding agency records and to order the production of any agency records improperly

withheld from the complainant."  5 U.S.C. 552(a)(4).  Courts consistently dismiss a FOIA case

once all non-exempt, responsive documents have been released, because the claims are rendered

moot.  Anderson v. Dep't of Health and Human Serv., 3 F.3d 1383, 1384 (10th Cir. 1993)

("Once the government produces all the documents a plaintiff requests, her claim for relief under

the FOIA becomes moot") (citing Carter v. Veterans Administration, 780 F.2d 1479,

1481 (9th Cir. 1986)); Lechliter v. DOD, 371 F. Supp.2d 589, 597 (D. Del. 2005) ("once the

records are produced, the controversy becomes moot") (citing Perry v. Block, 684 F.2d 121, 125

(D.C. Cir. 1982)).

Here, all responsive non-exempt records have been released to Plaintiff.  Far from evidencing any pattern or practice of delay, after receiving each of the requests the agency contacted the Plaintiff (numerous times), made interim releases of documents, and kept Plaintiff informed of the progress of the searches for responsive records.  Smith Decl. at ¶ 12. Accordingly, Defendant neither acted arbitrarily nor abuse its discretion in processing Plaintiff's three FOIA requests.

**V.     Conclusion**

For the foregoing reasons, the Court should dismiss Plaintiff's First Claim for lack of subject matter jurisdiction because Plaintiff failed to timely file an appeal involving that FOIA request.  As for the Second and Third Claims, Defendant appropriately applied Exemption 5 to withhold predecisional and deliberative information.  As of the two remaining Fourth and Fifth Claims, Defendant has shown that it promptly processed Plaintiff's three FOIA requests and provided documents as they became available.  Accordingly, the Court should grant summary judgment in favor Defendant on these four claims.

Dated: October 7, 2005                              Respectfully Submitted,

                                                    _____/s/_____
                                                    KENNETH L. WAINSTEIN, D.C. BAR #451058
                                                    United States Attorney

                                                    _____/s/_____
                                                    R. CRAIG LAWRENCE, D.C. BAR #171538
                                                    Assistant United States Attorney

                                                    _____/s/_____
                                                    JOHN C. TRUONG, D.C. BAR #465901
                                                    Assistant United States Attorney

555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No: 05-cv-1045 (RMC) |
| | ) |
| CARLOS GUTIERREZ, | )    ECF |
| Secretary, Department of Commerce, et al., | ) |
| | ) |
| Defendants. | ) |

_____)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Upon consideration of Defendant's Motion to Dismiss or, in the alternative, For

Summary Judgment, the Opposition thereto, and the entire record herein, it is this _____ day of

_____, 2005,

ORDERED that  Defendant's Motion to Dismiss or, in the alternative, For Summary

Judgment be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED

with prejudice.

SO ORDERED.


_____
U.S. District Judge