**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:05CV01045 (RMC) |
| | ) |
| CARLOS GUTIERREZ, | ) |
| WILLIAM T. HOGARTH, | ) ECF |
| and the NATIONAL MARINE FISHERIES | ) |
| SERVICE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S COMBINED CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56. Plaintiff respectfully moves the Court for summary judgment.  In support of this Motion, Plaintiff submits the attached Memorandum of Points and Authorities with Exhibits and Statement of Material Facts for Which There is No Genuine Issue.

Dated: October 25, 2005

Respectfully submitted,

_Justin Augustine_

_____

Brent Plater (DC Bar No. 486505)
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone:  (415) 436-9682
Facsimile: (415) 436-9683
bplater@biologicaldiversity.org

Justin Augustine (CA Bar No. 235561)

*Pro hac vice*
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA  94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
jaugustine@biologicaldiversity.org

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:05CV01045 (RMC) |
| | ) |
| CARLOS GUTIERREZ, | ) |
| WILLIAM T. HOGARTH, | ) ECF |
| and the NATIONAL MARINE FISHERIES | ) |
| SERVICE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO
GENUINE ISSUE**

Pursuant to Local Rule 7(h), Plaintiff Center for Biological Diversity respectfully

submits this Statement of Material Facts As to Which There Is No Genuine Issue in support of

its Motion for Summary Judgment:

1.    The Center for Biological Diversity ("the Center") submitted three FOIA requests to

the National Marine Fisheries Service ("NMFS") in order to obtain information regarding coral

species the Center had petitioned for protection under the Endangered Species Act.  See

Exhibits A, B, and C.

2.    The Center's first FOIA request, sent on August 27, 2004, asked for the following

information from the National Marine Fisheries Service ("NMFS"):

> A copy of all documents, inter- and intra-agency communications, and
> all other information received by the National Marine Fisheries Service
> in response to the public comment period/request for information on the
> Center's petition to list *Acropora palmata* (Elkhorn Coral), *A.
> cervicornis* (Staghorn Coral), and *A. prolifera* (Fused-Staghorn Coral)
> as endangered species under the Endangered Species Act.   The public
> comment period was announced at 69 Fed. Reg. 34,995 (June 23, 2004)
> and ended on August 23, 2004.

See Exhibit A, p. 1-5.

3.      Although FOIA mandates a twenty working-day response period, NMFS did not respond to the Center's request until October 15, 2004—a delay of almost two weeks. Moreover, not only was the response late, NMFS chose to redact the contact information of several individuals who submitted comments into the public record during the public comment period.  See Exhibit A, p. 6-7.

4.      The Center administratively appealed the redaction, and explained to NMFS the absurdity of redacting the contact information for individuals who submitted their contact information purposefully into the public record.  See Exhibit A, p. 8-10.

5.      Instead of responding to the merits of the appeal, however, NMFS replied to the Center with a brief letter stating that the Center's appeal arrived too late[1] to be considered. Thus, the Center exhausted its administrative remedies—or at least NMFS arbitrarily and capriciously cut-off the administrative remedy procedures—leaving the Center no other recourse than federal court.  See Exhibit A, p. 11.

6.      On September 30, 2004, the Center submitted a second coral FOIA request to NMFS for the following information:

> A copy of all documents, inter- and intra-agency communications, notes, electronic mail, and/or any other document pertaining to Caribbean Acroporids written by, received by, or within the files of Jennifer Ann Moore, Natural Resource Specialist, NOAA Fisheries Protected Resources Division, Southeast Regional Office.  Responsive information that post-dates March 1, 2004 are not included in this request.

See Exhibit B, p. 1-5.

---

[1]      NMFS' conclusion that the Center's appeal was late is factually in error.  Calculating the deadline pursuant to rules established by the Federal Rules of Civil Procedure, the Center's appeal was precisely on time—despite the fact that the Center was prejudiced in responding to the appeal due to an unexplained difference of 5 business days between the date stamped on NMFS' response to the Center's FOIA request, and the date that the letter was actually received by the Center.

7.     NMFS again failed to respond to the Center's FOIA request within the timeframe mandated by FOIA, and did not respond until January 20, 2005, exceeding FOIA's response period by fifty days.  However, the letter failed to adequately discuss why the documents fit within Exemption Five's "deliberative process" category.  Instead of thoroughly addressing the deliberative process involved and the predecisional nature of the withheld/redacted documents, NMFS only divulged the document's issue date and a brief reference to the document's subject matter such as "Attachment to email from Bruckner to Jacukiewicz et al. re Acropora meeting update."  Such limited information failed to provide the Center with any real knowledge as to whether the documents were lawfully withheld.  See Exhibit B, p. 6-8.

8.     Consequently, the Center appealed NMFS' response.  See Exhibit B, p. 9-11.

9.     On July 8, 2005, after 98 working days, an unlawful delay of over 3 months, and after the original complaint in this action was filed, NMFS finally answered the Center's appeal. The appeal response, however, is inadequate.  Of the sixteen withheld/redacted documents that the Center appealed for release, only one is now released in its entirety.  The other fifteen documents are still being withheld or redacted pursuant to Exemption Five.  See Exhibit B, p. 13-15.

10.     Moreover, just like the original inadequate response that NMFS provided in January, 2005, the July 8, 2005, appeal response fails to provide enough information for the Center to accurately assess whether the documents are lawfully withheld.  The appeal response contains conclusory statements about the withheld documents and provides no real evidence to justify the withholding.  See Exhibit B, p. 13-15.

11.     The documents are described in such a minimal way that NMFS is essentially demanding that the Center take NMFS' word that the documents are exempt.  The only

description provided in the appeal response is that the documents are either "draft working

papers," "update sheets," or "email communications."  <u>See</u> Exhibit B, p. 13-15

    12.    On September 30, 2004, the Center made a third coral FOIA request asking for the

following information:

> A copy of all documents, inter- and intra-agency communications, and
> all other information received by the National Marine Fisheries Service
> in selecting members for a Biological Review Team for the Center's
> petition to list *Acropora palmata* (Elkhorn Coral), *A. cervicornis*
> (Staghorn Coral), and *A. prolifera* (Fused-Staghorn Coral) as
> endangered species under the Endangered Species Act.

<u>See</u> Exhibit C, p. 1-5

    13.    NMFS responded quickly to this request on October 19, 2004.  <u>See</u> Exhibit C, p. 6.

    14.    However, the reply contained very little information and failed to adequately address

the request.  Consequently, the Center appealed the response as unresponsive and inadequate.

<u>See</u> Exhibit C, p. 7-8.

    15.    NMFS received that appeal on November 18, 2004 (<u>See</u> Exhibit C, p. 9), but instead

of issuing a response within twenty working days as FOIA requires, NMFS waited until July

29, 2005, a total of 173 working days and mere days before Defendants' answer was due.  <u>See</u>

Exhibit C, p. 12-15.

    16.    The appeal response acknowledged that more documents did in fact exist that were

responsive to the request.  However, seven documents consisting of twelve pages were

partially withheld pursuant to FOIA's Exemption Five.  <u>See</u> Exhibit C, p. 12-15

    17.    The response claims that the withheld information "consists of opinions and

recommendations to assist in predecisional deliberations about the selection of members of the

BRT."  However, no further information is provided to explain why Exemption Five actually

applies to the documents in question. Once again, NMFS is essentially asking that the Center

take its word that the documents are exempt. <u>See</u> Exhibit C, p. 12-15.

Dated: October 25, 2005

Respectfully submitted,

_____

Brent Plater (DC Bar No. 486505)
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone:  (415) 436-9682
Facsimile: (415) 436-9683
bplater@biologicaldiversity.org

Justin Augustine (CA Bar No. 235561)
*Pro hac vice*
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA  94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
jaugustine@biologicaldiversity.org

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:05CV01045 (RMC) |
| | ) |
| CARLOS GUTIERREZ, | ) |
| WILLIAM T. HOGARTH, | ) ECF |
| and the NATIONAL MARINE FISHERIES | ) |
| SERVICE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, Center for Biological Diversity ("the Center"), brought this action to enforce

the Freedom of Information Act ("FOIA"). On three separate occasions, the National Marine

Fisheries Service ("NMFS") avoided its FOIA duties by either refusing to acknowledge the

Center's FOIA appeal or by indefinitely delaying a response to the Center's appeal. Only after

the Center filed this lawsuit did NMFS respond to two of the Center's three appeals.

NMFS' efforts subsequent to the filing of the case still fall far short of FOIA's

requirements. First, NMFS has not disputed the Center's claim that Exemption 6 does not apply

to public comments and instead, wrongly states that the Center's appeal arrived too late to be

considered. Second, NMFS continues to improperly withhold documents under FOIA

Exemption 5 and has failed to provide adequate descriptions of the withheld documents so that

the Center, or the Court, can effectively evaluate NMFS' assertions.

The Center repeatedly asked NMFS to adequately describe why any withheld documents must be withheld.  The Center's initial FOIA requests, the Center's administrative appeals, the Center's Complaint, and the Center's Amended Complaint all explicitly state that any withheld documents should be adequately described so that it can be ascertained whether the withheld documents really necessitate Exemption 5's application.  Despite the Center's requests, NMFS has failed to provide a description of the withheld documents beyond conclusory statements that shed no light on the question of Exemption 5 applicability.  Moreover, despite NMFS' assertion that its recently created "index" satisfies its <u>Vaughn</u> duties (<u>See</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973)), NMFS fails to meet those stringent requirements and regardless, the index shows that Exemption 5 does not apply to the withheld materials.

Not only has NMFS improperly applied FOIA Exemptions, it has made a pattern and practice of failing to respond to the Center's requests and appeals within a timely manner.  Only after the Center filed this Complaint did NMFS finally respond to two of the three appeals (NMFS failed to respond at all to the other appeal by claiming it was late.).  By then, NMFS was late by 78 working days and 173 working days, respectively.

The Center respectfully requests that this Court find NMFS in violation of FOIA for 1) failing to provide an adequate index, 2) improperly applying FOIA Exemptions 5 and 6 to the withheld documents, and 3) failing to respond in a timely manner to the Center's requests/appeals.

## FACTUAL BACKGROUND

### The Endangered Species Act

The purpose of the Endangered Species Act ("ESA") is "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be

conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b) (2005).

The ESA divides responsibility for protection of endangered and threatened species between the Department of Interior and Department of Commerce.  The Department of Commerce is responsible for most marine species including the corals at issue in this litigation. Within the Department of Commerce, the National Marine Fisheries Service is responsible for handling endangered and threatened species issues.   50 C.F.R. § 402.01 (2005).

To achieve the ESA's objectives, NMFS is required to protect imperiled species by listing them as either "threatened" or "endangered" if they are facing extinction due to any one, or any combination of, the following factors:

> (A)    the present or threatened destruction, modification, or curtailment of its habitat or range;
>
> (B)    over-utilization for commercial, recreational, scientific, or educational purposes;
>
> (C)    disease or predation;
>
> (D)    the inadequacy of existing regulatory mechanisms; or
>
> (E)    other natural or manmade factors affecting its continued existence.

ESA § 4(a)(1), 16 U.S.C. § 1533(a)(1).

A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range."  ESA § 3(6), 16 U.S.C. § 1532(6).  A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." ESA § 3(20), 16 U.S.C.  § 1532(20).

3

Any interested person can begin the ESA listing process by filing a petition to list a species with the Secretary. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a)(2005). Upon receipt of a petition to list a species, the Secretary has 90 days to the maximum extent practicable to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1). This determination is known as a 90-day finding.

If the Secretary makes a positive 90-day finding, she must promptly publish it in the Federal Register and commence a "status review" of the species. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A). After issuing a positive 90-day finding, the Secretary has 12 months from the date that she received the petition to make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but presently precluded by work on other pending proposals for listing species of higher priority. ESA § 4(b)(3)(B), 16 § 1533(b)(3)(B); 50 C.F.R. § 424.14(b)(3).

If the Secretary finds that listing the species is warranted, she must publish a proposed rule to list the species as endangered or threatened in the Federal Register. ESA § 4(b)(5), 16 U.S.C. § 1533(b)(5). Within one year of the publication of a proposed rule to list a species, the Secretary must make a final decision on the proposal. ESA § 4(b)(6)(A), 16 U.S.C. § 1533(b)(6)(A). Moreover, when making ESA listing decisions, the Secretary "shall make determinations…solely on the basis of the best scientific and commercial data available…." 16 U.S.C. § 1533(b)(1)(A).

**The Center's Endangered Species Act Petition**

       *Acropora palmata* (Elkhorn Coral), *A. cervicornis* (Staghorn Coral), and *A. prolifera* (Fused-Staghorn Coral) are coral species that currently face a high risk of extinction. Over the past 30 years, these corals have suffered a severe decline due to disease, thermally induced bleaching, physical destruction from storms, predation, competition, and human activities that degrade habitat and water quality.

       In an effort to protect the imperiled coral species, the Center submitted a formal administrative petition to NMFS on March 3, 2004. This petition initiated the ESA process for listing the corals as endangered or threatened. The petition provided detailed information regarding the numerous threats currently facing the corals and explained why it is imperative that the corals receive ESA protection.

       On June 23, 2004, NMFS announced its 90-day finding in response to the Center's petition and concluded that due to the scientific information presented by the Center, listing "may be warranted." As a result, NMFS commenced a status review in order to determine whether the corals should be formally listed. As part of the review, NMFS requested any comments from the public that might help in determining the corals' status. That comment period ended on August 23, 2004.

       On March 18, 2005, NMFS published its 12-month finding in response to the Center's petition. 70 Fed. Reg. 13151. The finding concluded that two of the species for whom the Center petitioned, *A. palmata* (Elkhorn Coral) and *A. cervicornis* (Staghorn Coral), warranted listing as threatened. The finding further explained that NMFS would promptly publish a proposed rule regarding the listing.

The proposed rule to list the species was published in the Federal Register on May 9, 2005. 70 Fed. Reg. 24359. The proposed rule announced that public comments would be solicited on the proposed rule through August 8, 2005.

**The Center's "Public Comments" FOIA Request**

In order to obtain the public comments submitted as part of the coral status review process, the Center submitted a FOIA request to NMFS on August 27, 2004. <u>See</u> Exhibit A, p. 1-5. By obtaining such documents, the Center can determine what information NMFS had before it when making its ESA listing determination for the corals. Names and addresses of those people submitting comments is important because it provides insight into what type of persons agencies give weight to when making decisions.

On October 22, 2004, long after the 20 working day response period had expired, the Center finally received a response to the request. <u>See</u> Exhibit A, p. 6. However, the response was dated October 15, 2004 which means it took six postal days to arrive. Pursuant to Department of Commerce regulations, the appeal period for the Center began on October 15, not October 22. Thus, although the Center should have received 30 calendar days to appeal, this unexplained time discrepancy reduced the appeal period to 23 days.

NMFS's October 15, 2004, response withheld personal information for individuals who had submitted public comments. <u>See</u> Exhibit A, p. 6. Consequently, the Center appealed NMFS' decision and pointed out in the appeal why NMFS' reliance on Exemption 6 is erroneous. <u>See</u> Exhibit A, p. 8-10.

6

Instead of providing the withheld information, NMFS wrote back to the Center on November 26, 2004, stating that the Center's appeal was 2 days late[1] and therefore, the appeal was not being considered.  See Exhibit A, p. 11.  While NMFS' conclusion that the appeal was late is incorrect (see Argument, section A), such a conclusion precluded further administrative review of the Center's appeal and exhausted the Center's administrative remedies.

**The Center's "Jennifer Moore" FOIA Request**

In order to obtain more information regarding NMFS' understanding of the imperiled corals, on October 1, 2004, the Center asked for all documents "written by, received by, or within the files of Jennifer Ann Moore."  See Exhibit B, p. 1-5.  Ms. Moore is a Natural Resource Specialist for NMFS and has spent considerable time studying the status of the coral species.

Between October 14, 2004, and January 19, 2005, the Center telephoned NMFS on several occasions to check the status of the request but was unable to obtain a timetable as to when documents would likely be disclosed.  On January 19, 2005, NMFS did finally respond, but sixteen documents were either redacted or entirely withheld under FOIA Exemption 5.  See Exhibit B, p. 6.

The response failed to provide any evidence as to how or why Exemption 5 applied to the withheld/redacted documents.  Instead of addressing the deliberative process involved, NMFS divulged only the document's issue date and a brief reference to its subject such as "Attachment to email from Bruckner to Jacukiewicz et al. re Acropora meeting update."  See Exhibit B, p. 6-7.  Such limited information failed to provide the Center with any substantive details as to why it was necessary to apply Exemption 5 to the withheld materials.

---

[1]     In their brief, Defendants now only claim that the appeal was 12 minutes or one day late.

In order to at least obtain a helpful description of the withheld documents so that it could actually be ascertained whether Exemption 5 applied to the withheld materials, the Center appealed NMFS' response on February 16, 2005. See Exhibit B, p. 9. On March 30, 2005, the Center telephoned NMFS to check the status of the appeal and was informed that it would likely be out in two weeks. Over the next month, the Center repeatedly called NMFS to find out what was happening with the appeal and was told that it would be out very soon.

However, not until a month and a half after the Center filed this lawsuit did NMFS actually provide its appeal response. See Exhibit B, p. 13-15. Even then, fifteen documents were still withheld pursuant to Exemption 5. Id. More importantly, despite the Center's request for a thorough description of the nature of the withheld documents, NMFS once again failed to provide any helpful information as to why Exemption 5 applies to the withheld documents. Id. Instead, NMFS simply made conclusory statements that the withheld documents were part of the deliberative process or were predecisional. Id. Such a response is antithetical to FOIA because it prohibits the requester from understanding why a document is not open to the public.

**The Center's "BRT" FOIA Request**

NMFS, as part of the ESA listing process for the coral species, convened a Biological Review Team ("BRT") to assess the status of the species. The members of a BRT are important because their scientific recommendations help determine whether a species is listed. Thus, in order to understand the role of the BRT and how its members were chosen, the Center made a FOIA request on October 1, 2004, asking for "all documents…received by NMFS in selecting members for a BRT." See Exhibit C, p. 1-5.

On October 20, 2004, the Center received a response to its request. See Exhibit C, p. 6. However, the response only contained a few documents and therefore, the Center appealed the

sparse response on November 16, 2004.  <u>See</u> Exhibit C, p. 7-8.  On January 19, 2005, NMFS

provided a supplemental response to the Center's request but did not answer the Center's appeal.

<u>See</u> Exhibit C, p. 10-11.  From December until April, the Center contacted NMFS on several

occasions to discuss the status of the appeal.  NMFS repeatedly assured the Center that a

response would soon be forthcoming.

     Nonetheless, no response came, and consequently, the Center filed this action on May

23, 2005.  On August 5, 2005, mere days before the Defendant's answer was due, the Center

finally received an appeal response from DOC—173 working days after the Center had filed its

appeal.  <u>See</u> Exhibit C, p. 12-15.  The response acknowledged that additional pages had been

found that were responsive to the Center's request.  Id.  However, 12 pages had information

redacted from them pursuant to FOIA Exemption 5.  Id.  Once again, despite the Center's

request for a useful description of withheld documents, NMFS simply provided a conclusory

statement that the redacted documents were used to "assist in predecisional deliberations about

the selection of members of the BRT to review whether species of coral should be listed as

endangered species…."  Id. at 15.

<u>**STANDARD OF REVIEW**</u>

     Summary judgment is appropriate when the motion papers, affidavits, and other

submitted evidence demonstrate that no genuine issue of material fact exists and that the moving

party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  In regard to FOIA

violations, the courts of the D.C. Circuit recognize that summary judgment is appropriate.  <u>See</u>

<u>Judicial Watch, Inc. v. DOE</u>, 412 F.3d 125, 128(D.C. Cir. 2005); <u>Friends of Blackwater v.</u>

<u>United States DOI</u>, 2005 U.S. Dist. LEXIS 21089, *6 (D.D.C. 2005); <u>Trupei v. FAA</u>, 2005 U.S.

Dist. LEXIS 20111, *2 (D.D.C. 2005).

9

In <u>Nat'l Ass'n of Home Builders v. Norton</u>, the D.C. Circuit outlined the framework that district courts should use for FOIA decisions:

"The purpose of the Freedom of Information Act, as the Supreme Court instructed in <u>Department of the Air Force v. Rose</u>, is 'to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny.' 425 U.S. 352, 361 (1976). FOIA reflects 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' <u>Id.</u> at 360-61 (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). Although Congress enumerated nine exemptions from the disclosure requirement, 'these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.' <u>Id.</u> at 361; <u>see also</u> <u>United States Dep't of State v. Ray</u>, 502 U.S. 164, 173 (1991). At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure,' Ray, 502 U.S. at 173, and that the statutory exemptions, which are exclusive, are to be 'narrowly construed,' <u>Rose</u>, 425 U.S. at 361. In reviewing de novo a grant of summary judgment for the government in a FOIA case, the court therefore remains 'mindful that the burden is on the agency to show that requested material falls within a FOIA exemption.' <u>Petroleum Info. Corp. v. United States Dep't of the Interior</u>, 976 F.2d 1429, 1433 (D.C. Cir. 1992)."

309 F.3d. 26, 31-2 (D.C. Cir. 2002)

In order to meet its burden in regard to a FOIA exemption, an agency submits what is now referred to as a Vaughn index. <u>See</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973). This index should "provide a court with an adequate description of documents that are being withheld from production pursuant to a specified FOIA exemption and justification for the applicability of the exemption invoked." <u>Judicial Watch, Inc. v. United States Dep't of Commerce</u>, 337 F. Supp. 2d 146, 161 (D.D.C. 2004). The Vaughn index must be sufficiently detailed to allow a court to determine whether the claimed exemptions apply to the withheld documents. <u>Oglesby v. U.S. Dep't of Army</u>, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Statements by the agency "cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." <u>King v. Dep't of Justice</u>, 830 F.2d 210, 219 (D.C. Cir. 1987). As pointed out by the D.C. Circuit in <u>Senate of Puerto Rico ex rel. Judiciary Comm. v. United States DOJ</u>, "where no factual support is provided for an essential element of the claimed privilege or shield, the label conclusory is surely apt." 823 F.2d 574, 585 (D.C. Cir. 1987).

10

Simply providing each "document's issue date, its author and intended recipient, and the briefest of references to its subject matter will not do."  Id.

## ARGUMENT

**A.    NMFS IMPROPERLY DENIED THE CENTER'S "PUBLIC COMMENTS" APPEAL**

### 1.    The Appeal Was On Time

On November 15, 2004 at 2:12 PM Pacific Time, NMFS received the Center's Public Comments FOIA appeal regarding NMFS' improper use of Exemption 6 for personal information contained within public comments.  Instead of disclosing the information, or at the very least, explaining why Exemption 6 should apply to public comments, NMFS chose to simply ignore the Center's appeal by sending a letter claiming the appeal was late.

Apparently, NMFS has changed its tune regarding the "lateness" of the Center's appeal. Initially, in its November 26, 2004, letter, NMFS claimed the Center's appeal was two days late. Now, however, in its brief, NMFS is only claiming the appeal was one day late.

Regardless, the truth of the matter is that the appeal is not late at all.  The appeal, as NMFS admits, arrived on November 15, 2005.  Therefore, it arrived within 30 calendar days. NMFS, however, claims that because the appeal did not arrive by 5:00 PM Eastern time, the appeal is late.  Despite the fact that NMFS had violated FOIA's time requirements on numerous occasions when dealing with the Center's requests, NMFS now claims that 12 minutes is too much.

This argument should not be countenanced.  One need only look carefully at Department of Commerce regulation, 15 CFR 4.10, to see that the 12 minutes NMFS complains of is actually not a violation of 15 CFR 4.10.  The regulation states that the appeal must be received by 5 p.m. Eastern time, not 5:00 PM Eastern time.  By failing to provide a specific minute, such

ambiguity should be resolved in the Center's favor[2].  See John Doe Agency v. John Doe Corp., 493 U.S. 146, 164 (U.S. 1989).

Even if the Center's appeal was 12 minutes late, NMFS did not have to reject the Center's appeal.  Nothing in the regulations *requires* NMFS to reject late appeals, especially in light of the fact that NMFS has repeatedly failed (by much more than 12 minutes) to provide the Center with documents within the timelines mandated by FOIA, and in light of the fact that NMFS changed its regulations, without notice and comment, for e-filing of appeals only 15 days before the Center submitted its Public Comments request[3].  Therefore, because the Center's appeal was actually on time, or at the very least, should have been accepted, and because NMFS refuses to respond to the appeal, the Center has exhausted its administrative remedies and this Court has jurisdiction to find that NMFS' use of Exemption 6 is unlawful under the circumstances.

### 2.     NMFS Unlawfully Applied Exemption 6 To Public Comments

Exemption 6 protects disclosure under FOIA of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  In order for Exemption 6 to be properly invoked for a communication or document, an agency must prove "first that they are 'personnel and medical files and similar files,' and second that their disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19,

---

[2]      If one rounds down, as should be the case, 5:12 falls within NMFS' 5 p.m. requirement, and therefore, the appeal was not even 12 minutes late (Between 5:00 and 5:29, one would round down to 5 PM; between 5:30 and 5:59 one would round up to 6 PM.).

[3]      NMFS' October 15, 2004, letter to the Center also fails to explicitly mention the 5 PM Eastern deadline.  Instead, it only explicitly refers to the 30 day deadline for an appeal.  See Exhibit B, p.7.

36 (D.D.C. 2000) (quoting Dep't of State v. Washington Post Co., 456 U.S. 595, 599-603, (1982)).

As a preliminary matter, public comments are not "personnel files [or] medical files [or] similar files" and therefore do not fall within Exemption 6. The Supreme Court has suggested that Exemption 6 applies only to "Government records" that contain private information. U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982). Comments submitted voluntarily to the government are not similar to personnel or medical government records, even when the comments contain personal information. Therefore, Exemption 6 is not applicable here.

Moreover, disclosure of public comments does not constitute a "clearly unwarranted invasion of personal privacy." In this instance, NMFS, as part of its status review for listing the coral species, solicited comments from the public. See Listing Endangered and Threatened Wildlife and Plants and Designating Critical Habitat; 90-Day Finding on a Petition to List Elkhorn Coral, Staghorn Coral, and Fused-staghorn Coral, 69 Fed. Reg. 34995 (June 23, 2004). The Federal Register notice did not in any way impose limitations on the public's ability to view the comments or the personal information accompanying them.

A D.C. District Court has already addressed this very issue. Pointing out that "the public has much to learn about defendants' rulemaking process from the disclosure of commenters' names and addresses[4]," the court concluded that such information must be disclosed. Alliance for the Wild Rockies v. DOI, 53 F. Supp. 2d 32, 37 (D.D.C. 1999). Just as in this case, the

---

[4]     "The public will be able to determine how the defendants use the written comments in reaching a final rule; whether the defendants give greater weight to the comments submitted by experts in the field over the comments of laypeople; whether the defendants distinguish between multiple comments submitted by a single contributor when quantifying public sentiment; and whether the defendants give greater weight to the comments submitted by residents of the Bitterroot region and the outlying regions than to the comments submitted by those who do not live within close proximity to the Bitterroot region." Alliance for the Wild Rockies v. DOI, 53 F. Supp. 2d 32, 37 (D.D.C. 1999)

13

notice in <u>Alliance for Wild Rockies</u> "made no reference to any limitations on the public's ability to review the comments submitted." <u>Id.</u> Moreover, as in <u>Alliance for the Wild Rockies</u>, NMFS "could have taken efforts at the time the notice was published to assure commenters that their responses would be confidential or to offer them the opportunity to request anonymity[5]." <u>Id.</u> Because NMFS did not do so, it can not now claim that such information should not be made public.

Public comments are voluntary. <u>See Id.</u>, 53 F. Supp. 2d 32, 37. No one submitted their information as part of any required program. Thus, for NMFS to assert that such information violates privacy interests makes no sense. In the interest of open government, this Court should require NMFS to disclose all information that was withheld from the Center's public comment request/appeal.

**B.    NMFS IMPROPERLY APPLIED EXEMPTION 5 TO THE CENTER'S JENNIFER MOORE AND BRT FOIA APPEALS**

**1.    NMFS' Vaughn Index Is Conclusory And Inadequate**

FOIA Exemption 5 protects disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Agencies invoking Exemption 5 most frequently rely upon the deliberative process privilege, the purpose of which is to prevent injury to the quality of agency decisions by allowing the "the withholding of all papers which reflect

---

[5]    For example, other ESA listing notices explicitly state: "Our practice is to make comments, including names and home addresses of respondents, available for public review during regular business hours. Individual respondents may request that we withhold their home address from the rulemaking record, which we will honor to the extent allowable by law. There also may be circumstances in which we would withhold from the rulemaking record a respondent's identity, as allowable by law. If you wish us to withhold your name and/or address, you must state this prominently at the beginning of your comment. Anonymous comments will not be considered. We will make all submissions from organizations or businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, available for public inspection in their entirety." 69 Fed.Reg. 6600, 6620. (February 11, 2004).

the agency's group thinking in the process of working out its policy." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153 (1975).

In applying the deliberative process privilege under Exemption 5, the documents to be withheld or redacted must be both predecisional and deliberative. See Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993). For a communication or document to be pre-decisional, it must be "actually Antecedent to the adoption of an agency policy." Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978). For a communication or document to be deliberative, it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matter." Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

In this case, NMFS relies on the deliberative process privilege of Exemption 5 as the basis for withholding all but one[6] of the documents requested by the Center. However, instead of adequately describing the undisclosed documents, NMFS continues to make bald conclusory assertions that provide no insight into the actual nature of the withheld documents. Just as in Senate of Puerto Rico ex rel. Judiciary Comm. v. United States DOJ, where the D.C. Circuit concluded that the Department of Justice's Vaughn index was insufficient and conclusory, this court, too, should find that NMFS' Vaughn index is unsatisfactory. 823 F.2d at 585-86.

In Puerto Rico, a typical insufficient entry read as follows: "Memo dated 8-20-80 from Stephen Clark, Attorney, CRT to Charles Wellford, Deputy Administrator, Federal Justice Research Program (2 pages). RE: Report on status of Cerro Maravilla case . . . Candid

---

[6]     NMFS claims that one document is exempt under the attorney-client privilege. If, as NMFS claims, the request was for legal advice, then it falls within Exemption 5. However, the Vaughn index provides no factual information to determine whether the document should fall under the attorney-client privilege. Therefore, this Court should require NMFS to more accurately describe the nature  of the document.

discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process. . . ." Id. at 584. Such an entry was declared unsatisfactory because providing "a document's issue date, its author and intended recipient, and the briefest of references to its subject matter will not do." Puerto Rico, 823 F.2d 574, 585 (D.C. Cir. 1987).

NMFS' index is in direct violation of Puerto Rico's pronouncement. All the NMFS index provides is a date, author and intended recipient, and a brief reference stating that the withheld documents address, for example, "how to structure the Atlantic *Acropora* status review and what should be included in the process." Vaughn Index, p.6. Other than that, while the descriptions appear lengthy, they consist almost entirely of conclusory statements. For instance, several of the entries repeatedly state that

> "the document consists of preliminary recommendations by NOAA employees for NOAA decisionmakers, which were part of Commerce's deliberations concerning decisions on ESA listing. To the extent that factual information is included within this document it is protected because the facts were selectively chosen as part of the decisionmaking process. The factual information is, therefore, an integral part of the deliberations undertaken by Commerce in determining how to structure the ESA assessment of candidate acroporid populations. This is a draft, a predecisional deliberative document the release of which would discourage open frank discussions on how NOAA should go about developing and implementing a program to inventory assess and monitor U.S. coral reef systems."

See Vaughn Index, p. 2-5[7]. Such information merely restates the legalese of the exemption but provides no substantive reasoning. As already stated, however, a Vaughn index must be sufficiently detailed to allow a court to determine whether the claimed exemptions apply to the withheld documents. Oglesby, 79 F.3d 1172, 1176. Therefore, this Court should find NMFS'

---

[7]    If the Court examines NMFS' other entries, it will find a similar pattern of lengthy but unhelpful statements. Each section of the index (it is divided into sections A, B, and C) contains its own conclusory statement of legalese that it is then repeated for every entry within such section. In other words, each index entry consists of 1) the date, 2) the author and intended recipient, 3) a brief title or sentence vaguely describing the document, and 4) a conclusory statement of legalese.

index insufficient.

Moreover, the D.C. Circuit has made clear that "designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege." Arthur Anderson & Co. v. Internal Revenue Serv., 679 F.2d 254, 257 (D.C. Cir. 1982). Accordingly, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). In the D.C. Circuit, "it has long been the rule that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). As with exemptions in general, NMFS has the burden of proving that the factual material is so intertwined with exempt information as to be unsegregable. See Mokhiber v. Dep't of the Treasury, 335 F. Supp. 2d 65, 69 (D.D.C. Sept. 9, 2004).

NMFS' Vaughn index, however, simply states that "[t]o the extent that factual information is included within the document, it is protected by (b)(5) deliberative process privilege because the facts were selectively chosen as part of the decisionmaking process." Such an assertion fails to meet NMFS' burden. Just as with NMFS' overall Vaughn index, conclusory statements about factual information are insufficient. "A blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability." Wilderness Soc'y v. United States DOI, 344 F. Supp. 2d 1, 18-19 (D.D.C. 2004). "The [Vaughn index] must afford 'a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" Id. at 19 (citing King v. United States Dep't of Justice, 830 F.2d 210, 218) (D.C. Cir. 1987). In other words, NMFS' Vaughn index should "specify in detail which portions of the document are disclosable and which are allegedly exempt." Vaughn, 484 F.2d at 827. Since that has not yet happened, this Court should find in favor of the Center.

### 2.    Exemption 5 Does Not Apply To The Withheld Documents Because There Is No Policy At Issue

The deliberative process aspect of Exemption 5 "is centrally concerned with protecting the process by which *policy* is formulated." Petroleum Info. Corp. v. United States Dep't of Interior, 976 F.2d 1429, 1435 (D.C. Cir. 1992)(emphasis in original). Thus, "only those materials that bear on the formulation or exercise of agency policy-oriented judgment fall within the privilege." Greenpeace v. National Marine Fisheries Serv., 198 F.R.D. 540 (D. Wash. 2000).

In Greenpeace, just as in this case, NMFS attempted to withhold responsive FOIA documents related to its Endangered Species Act obligations. The court found that NMFS' ESA decision was not a policy decision and hence was not exempt from FOIA under Exemption 5 because "determination of jeopardy and adverse modification under the ESA was not a process that implicated NMFS's policy-oriented judgment." Greenpeace, 198 F.R.D. 540, 544. The court went on to say that while "a determination of jeopardy and adverse modification under the ESA requires the agency to collect scientific facts and data, and to reach expert scientific conclusions based on these facts,...the fact that scientific expertise is brought to bear 'does not transform interpretations of facts into communications protected by the deliberative process privilege.'" Greenpeace, 198 F.R.D. 540, 544 (citing Seafirst Corp. v. Jenkins, 644 F. Supp. 1160, 1163 (W.D. Wash. 1986)).

This case is nearly identical to Greenpeace[8]. Just like ESA Section 7, the Section 4 listing process of the ESA does not require, nor permit, discretionary policy-making. A determination of whether a species is endangered or threatened, just like a determination of

---

[8]    Other district courts in the Ninth Circuit have declined to follow the Greenpeace court. See Ctr. for Biological Diversity v. Norton, 2002 U.S. Dist. LEXIS 27617 (D. Ariz. 2002); Ctr. for Biological Diversity v. Norton, 336 F. Supp. 2d 1155, 1159 (D.N.M. 2004). However, in light of Supreme Court's statements that FOIA's exemptions should be construed narrowly (see Rose, 425 U.S. at 361), and in light of the D.C. Circuit's conclusion that material not "associated with a significant policy decision" is not deliberative (see Petroleum Info. Corp., 976 F.2d at 1437), this court should adopt Greenpeace and rule against NMFS.

jeopardy or adverse modification "is limited to objective, fact-based scientific conclusions." Id. Thus, the ESA Section 4 listing process as a whole is not "deliberative" within the meaning of the privilege. As a result, NMFS' withheld documents, because they do not reflect the exercise of "policy-oriented judgment," cannot be covered by FOIA Exemption 5 and should be immediately released. Greenpeace, 198 F.R.D. 540, 544.

## C.    NMFS HAS A PATTERN AND PRACTICE OF FAILING TO TIMELY RESPOND TO THE CENTER'S REQUESTS AND APPEALS

For all three FOIA requests at issue in this lawsuit, NMFS failed to respond to the Center's request within the twenty days mandated by FOIA. 5 U.S.C. § 552(a)(6)(A)(i). Only in "unusual circumstances," is an agency permitted to exceed the 20 day requirement but even then, an agency may only take ten additional days to respond to a request. 5 U.S.C. § 552(a)(6)(B).

Moreover, NMFS failed to meet FOIA's timelines for both the Center's Jennifer Moore and BRT appeals (NMFS failed to respond entirely to the substantive aspects of the Center's Public Comments request.). FOIA specifically states that after receiving a FOIA appeal, the agency "shall make a determination within twenty working days." 5 U.S.C. § 552(a)(6)(A)(ii).

In 1996, as part of the Electronic Freedom of Information Act Amendments, Congress explicitly declared that "Any person making a request … shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions..." 5 U.S.C. § 552(a)(6)(C)(i). Only, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Id. However, "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of

requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

Prior to the 1996 Amendments, the D.C. Circuit, in <u>Open America</u>, found that an agency is entitled to additional time to process a FOIA request when it "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it is exercising due diligence in processing the requests." <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605, 616.

In this instance, however, NMFS took 78 days to respond to the Jennifer Moore appeal and 173 days to respond to the BRT appeal, and only provided those appeal responses subsequent to the filing of this lawsuit. Such excess of time should not be found to qualify as due diligence and should be found a violation of FOIA. To do otherwise would undermine the importance of FOIA by allowing agencies to indefinitely fail to respond to FOIA appeals, thus preventing organizations like the Center from receiving time sensitive material[9].

## Conclusion

For the reasons provided above, this Court should declare that NMFS is in violation of FOIA for 1) failing to provide an adequate Vaughn index, 2) unlawfully withholding documents pursuant to FOIA Exemptions 5 and 6, and 3) failing to timely respond to Plaintiff's FOIA's requests and appeals as mandated by FOIA's timelines. In addition, this Court should order NMFS to issue a more detailed Vaughn index and disclose all non-exempt documents.

---

[9]    The Center planned to use the information requested in order to comment on NMFS' proposed rule for the corals. However, the period for public comments closed on August 8, 2005.

Dated: October 25, 2005

Respectfully submitted,

_Justin Augustine_
_____

Brent Plater (DC Bar No. 486505)
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone:  (415) 436-9682
Facsimile: (415) 436-9683
bplater@biologicaldiversity.org

Justin Augustine (CA Bar  No. 235561)
*Pro hac vice*
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA  94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
jaugustine@biologicaldiversity.org

Attorneys for Plaintiff