**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CARLOS GUTIERREZ, )<br>WILLIAM T. HOGARTH, )<br>and the NATIONAL MARINE FISHERIES )<br>SERVICE, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:05CV01045 (RMC)<br><br>ECF |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

The National Marine Fisheries Service ("NMFS") continues to offer no credible rationale for its failure to fully disclose Freedom of Information Act ("FOIA") documents to Plaintiff, Center for Biological Diversity ("the Center"). Contrary to NMFS's assertions, this court does have subject matter jurisdiction over the Center's August 27, 2004, Public Comments[1] FOIA Request. Moreover, the Center has demonstrated that FOIA Exemption Six does not apply to the information redacted from the Public Comments' documents.

NMFS also falsely asserts that FOIA Exemption Five applies to documents withheld from the Center's Jennifer Moore and BRT requests and fails to provide an adequate description of the withheld documents. Instead of thoroughly describing the withheld documents, NMFS argues that the conclusory justifications found in its Vaughn index are all that is necessary. Case law states otherwise.

---

[1] As described in the Center's Cross Motion for Summary Judgment, three FOIA requests are at issue in this litigation. They are referred to as the Public Comments request, the Jennifer Moore request, and the BRT request.

1                                    PLAINTIFF'S REPLY

Finally, NMFS believes that once it has responded to a FOIA request, the delay is inconsequential. That is simply not true. Public comments regarding NMFS's proposed rule to list two coral species were due on August 8, 2005. Because of NMFS's extreme delay in responding to the Center's FOIA requests and appeals[2], important information that the Center would have used when submitting its own public comments was unavailable. Thus, contrary to NMFS's claim that its delay caused no harm, the Center was indeed prejudiced by NMFS's actions, and NMFS should be held accountable.

**II.   Argument**

   A.   FOIA Exemption Six Does Not Apply To Public Comments

      1.   The Court has subject matter jurisdiction over the Center's Public Comments FOIA.

NMFS alleges that because the Center's Public Comments appeal arrived at 2:12 Pacific Standard Time instead of 2:00 Pacific Standard Time on November 15, 2004, this court is divested of its authority to rule on the merits of the Center's Public Comments administrative appeal. However, as the D.C. Circuit recently pointed out, "because exhaustion is a prudential consideration rather than a jurisdictional prerequisite, the district court was not precluded under these circumstances from deciding the merits of Wilbur's FOIA claim notwithstanding his failure to comply with the CIA's FOIA appeal deadline." Wilbur v. CIA, 355 F.3d 675, 678. (D.C. Cir. 2004). In other words, just because an agency claims a FOIA appeal is late, as NMFS does here, does not preclude subject matter jurisdiction nor does it prevent the court from deciding the merits of the appeal.

---

[2]   NMFS was 173 days late when it finally responded to the BRT FOIA and 98 days late when it finally responded to the Jennifer Moore FOIA.

In this instance, there exist ample reasons for deciding the merits of the appeal now. First, the letter partially denying the Center's Public Comments request does not state an appeal must be received by 5:00 PM Eastern Standard Time. Pl. Mot. Exh. A, p. 7. It only points out that an appeal is due in 30 days, a deadline that the Center met. Id. Moreover, the regulation requiring all appeals to be received by 5 PM was established *without notice and comment* and was published on August 12, 2004, mere days before the Center submitted its Public Comments request. See Disclosure of Government Information, 69 Fed. Reg. 49783, 49784 (August 12, 2004). Prior to August 12, 2004, no such 5 PM requirement existed. See Public Information, Freedom of Information and Privacy, 66 Fed Reg. 65631, 65636 (December 20, 2001). Therefore, because NMFS failed to adequately describe the appeal deadline in its denial letter and because the Center did indeed pursue its administrative remedies as far as possible by filing an administrative appeal within 30 days, this Court has the authority to hear the merits of that appeal.

2. NMFS Improperly Invoked FOIA Exemption Six

NMFS has provided no argument whatsoever to rebut the fact that Exemption Six does not apply to the information it redacted. It can't. As described in the Center's Cross Motion for Summary Judgment, Exemption Six does not apply to public comments because public comments are not "personal files [or] medical files [or] similar files." Regardless, the redacted information is public information. As a D.C. District Court has explicitly stated, "the public has much to learn about defendants' rulemaking process from the disclosure of commenters' names and addresses," and therefore, such information must be disclosed. Alliance for the Wild Rockies v. DOI, 53 F. Supp. 2d 32, 37 (D.D.C. 1999).

The point that NMFS misses is that public comments are just that, public. All comments at issue in this case were submitted as part of a public comment process that is completely voluntary. See Id. at 37. ("The Court's decision also rests in part on the fact that the comments, which bear the commenters' names and addresses, were submitted voluntarily. Of the approximately 24,000 voluntary submissions, only one commenter requested anonymity. None of the remaining commenters raised an objection to public release of their comments."). Moreover, NMFS did not state in its public comments notice that there would be "any limitations on the public's ability to review the comments." See Id.; see also Listing Endangered and Threatened Wildlife and Plants and Designating Critical Habitat; 90-Day Finding on a Petition to List Elkhorn Coral, Staghorn Coral, and Fused-staghorn Coral, 69 Fed. Reg. 34995 (June 23, 2004). Thus, there is no reason to redact them in any way.

      B.     FOIA Exemption Five Does Not Apply To The Jennifer Moore and BRT FOIA Requests

           1.     The Withheld Documents Are Not Part Of Any Policy-Oriented Judgment

As a preliminary matter, the documents associated with the Center's Jennifer Moore and BRT FOIA requests are not subject to FOIA's Exemption Five. The deliberative process aspect of FOIA Exemption Five "is centrally concerned with protecting the process by which *policy* is formulated." Petroleum Info. Corp. v. United States Dep't of Interior, 976 F.2d 1429, 1435 (D.C. Cir. 1992)(emphasis in original). "[W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable." Id.

The ESA listing process, which both the Jennifer Moore and BRT FOIA requests concern, does not permit discretionary policymaking. Instead, like Section 7 of the ESA, Section 4 of the ESA mandates a non-discretionary decision that requires objective fact-based findings regarding whether a species is endangered or threatened – such "objective, fact-based scientific

conclusions" are not policy decisions.  Greenpeace v. Nat'l Marine Fisheries Service, 198 F.R.D. 540, 544 (D. Wash. 2000).  Despite NMFS's assertion to the contrary, both Petroleum Info. Co. and Greenpeace apply to this case because no policy oriented judgment is implicated.  Therefore, Exemption Five is inapplicable to the withheld documents, and they should be released.

        2.        NMFS's Vaughn Index Is Deficient

Even if Exemption Five applies to ESA Section 4 decisions, NMFS still falsely believes that it only has to provide a cursory description of withheld documents in order to assert exemption status for them.  The D.C. Circuit has explicitly stated otherwise.

> "The significance of agency affidavits in a FOIA case cannot be underestimated.  As ordinarily, the agency alone possesses knowledge of the precise contents of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected.  As we observed in Vaughn v. Rosen, this lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution ….  Affidavits submitted by a governmental agency in justification for its exemption claims must therefore strive to correct, however imperfectly, the asymmetrical distribution of knowledge that characterizes FOIA litigation.  The detailed public index which in Vaughn we required of withholding agencies is intended to do just that: to permit adequate adversary testing of the agency's claimed right to an exemption, ….  Thus, when an agency seeks to withhold information, it must provide a relatively detailed justification…."

King v. United States Dep't of Justice, 830 F.2d 210, 218-19 (D.C. Cir. 1987).

NMFS also asserts in its Reply that its Vaughn index and affidavits meet D.C. Circuit requirements as described in Senate of Puerto Rico ex rel. Judiciary Comm. v. United States DOJ.  Def. Rep. 5-6.  However, one need only compare the two to see that is not the case.  In Puerto Rico, a typical entry submitted by DOJ in its Vaughn index and found to be deficient read as follows:

> "Memo dated 8-20-80 from Stephen Clark, Attorney, CRT to Charles Wellford, Deputy Administrator, Federal Justice Research Program (2 pages). RE: Report on status of Cerro Maravilla case . . . Candid discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process. . . ."

Senate of Puerto Rico ex rel. Judiciary Comm. v. United States DOJ, 823 F.2d 574, 584 (D.C. Cir. 1987).  In the present case, entries in NMFS's <u>Vaughn</u> index are much more lengthy but suffer from the same substantive deficiencies.  For example, Entry Number 4 in NMFS's <u>Vaughn</u> index reads:

> "December 15, 2003 – eighteen page attachment (withheld in full), a draft document entitled 'Atlantic Acropora Status Review,' written by a NOAA employee, attached to an email from Stephania Bolden to Andy Bruckner, cc: to Jennifer Jacukiewicz, all of whom were NOAA employees.  The document consists of preliminary recommendations by NOAA employes for NOAA decisionmakers, which were part of Commerce's deliberations concerning decisions on ESA listings.  To the extent that factual information is included within this document, it is protected by (b)(5) deliberative process privilege because the facts in the document were selectively chosen as part of the decisionmaking process.  The factual information is therefore, an integral part of the deliberations undertaken by Commerce in determining how to structure the ESA assessment of candidate acroporid populations.  This is a draft, a predecisional deliberative document the release of which would discourage open frank discussions on how NOAA should go about developing and implementing a program to inventory, assess, and monitor U.S. coral reef ecosystems.  The document is withheld under (b)(5) deliberative process privilege.  This document does not represent a final agency decision on the matter contained therein."

See <u>Vaughn</u> Index No.4 (Def. Mot. Gov. Exh. B)[3].  Comparing the <u>Puerto Rico</u> and NFMS indexes, the <u>Puerto Rico</u> entry tells us that the document is a report on "the status of the Cerro Maravilla case," while the NMFS entry tells us it is a report "concerning ESA listings" and "how to structure the ESA assessment of candidate acroporid populations."  As in <u>Puerto Rico</u>, such little information fails to provide the Center with enough knowledge to adequately

---

[3]  NMFS affidavit states: "The withheld information consists of internal, NOAA predecisional deliberative opinions and recommendations concerning whether, inter alia, Staghorn coral, Elkhorn coral, and other coral species should be designated as threatened or endangered species for placement on the Endangered Species List, how to structure the deliberations, what to take into account, and what should go into a final decision."  See Smith Decl. (Def. Mot. Gov. Exh. A, p. 6-7).  It provides no information about withheld documents not already found in the <u>Vaughn</u> index and therefore does not fill in any of the gaps left by the <u>Vaughn</u> index.

determine whether FOIA Exemption Five truly applies to the document.  Simply because the document is a status review "concerning ESA listings" does not automatically mean it is a document that would reveal the agency's "give and take."  See Nat'l Ass'n of Home Builders v. Norton, 353 U.S. App. D.C. 374 (D.C. Cir. 2002) ("Material is deliberative if it reflects the give-and-take of the consultative process.").  Therefore, as in Puerto Rico, NMFS must provide a more detailed description if it wishes to withhold the documents as "predecisional" and "deliberative."

        C.        NMFS has a pattern and practice of failing to respond to the Center's FOIA actions on time

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  NLRB v. Robbins Tire & Rubber, 437 U.S. 214, 242 (1978).  Information is only helpful, though, if it is received in a timely manner.  To that end, FOIA explicitly states that document requests and appeals be addressed promptly, within 20 days.  5 U.S.C. § 552(a)(6)(A)(i), 552(a)(6)(A0(ii).

The Center, in the Fifth Claim of its First Amended Complaint, charges NMFS with engaging in a pattern and practice of violating FOIA's 20 day timelines.  When an agency has 1) a pattern and practice that 2) results in unjustified delay in the release of documents, and 3) causes harm to the plaintiff, then declaratory and injunctive relief to remedy such practice is warranted.  See Payne Enterprises, Inc. v. United States, 837 F.2d 486, 488, 491 (D.C. Cir. 1988) (reversing as an abuse of discretion a district court's refusal to grant declaratory and injunctive relief on a pattern and practice claim). The Payne Court made clear that agencies are liable for violations of FOIA timelines regardless of whether the agency has since responded to the request or appeal.

> "Even though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future…. So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit."

Id. at 491. Moreover, it is a violation of FOIA "regardless of whether the documents are ultimately determined not to be subject to disclosure." Gilmore v. United States DOE, 33 F. Supp. 2d 1184, 1187-88 (D. Cal. 1998). ("This Court found that the CLERVER documents … would have been properly withheld pursuant to FOIA Exemption 4. The documents were still improperly withheld, however, because unless an agency makes a timely determination that documents should or should not be disclosed … there is no compliance with the FOIA.")

In this case, NMFS violated FOIA's timelines in regard to both the initial requests and the administrative appeals. The Public Comments request response was almost two weeks late, the Jennifer Moore request response was fifty days late, and the BRT request response, while it was received within 20 days, was inadequate because it failed to provide many responsive documents. See Pl. Mot. Exh. C, p. 7-8, 10-11.

The delay in regard to the Center's appeals of the initial responses was even more egregious. NMFS only responded to the Center's Jennifer Moore and BRT appeals after the Center filed this lawsuit and did so mere days before an answer was due. Nonetheless, NMFS was still 173 working days late for the BRT appeal and 98 working days late for the Jennifer Moore appeal. And, of course, NMFS failed to respond at all to the Public Comments appeal. Such evidence clearly illustrates NMFS's pattern and practice of failing to comply with FOIA's timelines.

NMFS believes its delay is justified because, as stated in its affidavit, "[a]t the time of the request, the Region had 24 open, active, FOIA requests." See Smith Decl. ¶ 12 (Def. Mot. Gov. Exh. A). However, NMFS provides no discussion or explanation as to why 24 FOIA requests is "exceptional." See 5 U.S.C. § 552(a)(6)(C)(i) ("If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."),  5 U.S.C. § 552(a)(6)(C)(ii) ("[T]he term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."); see also Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976).  NMFS simply states that it had 24 open requests and expects the Court to automatically conclude that 24 requests is "exceptional circumstances" and is not a "predictable agency workload."  Since the burden is on NMFS to adequately explain its delays, however, such a limited statement should not be tolerated, and NMFS should not be excused for its FOIA time violations.   Moreover, since NMFS has provided no evidence to suggest that it will cure its deficiencies, this Court should find NMFS in violation of FOIA and order NMFS to answer future Center requests in a more timely fashion.

NMFS also claims that its late responses to the Center's requests and appeals have caused no harm.  However, as the Center stated in its Summary Judgment Motion, public comments regarding NMFS's proposed rule to list two coral species were due on August 8, 2005.  The Center planned to use information from the Public Comments, Jennifer Moore and BRT FOIA requests as part of the comments it submitted.  Because that information was unavailable due to NMFS's late responses, the Center was indeed prejudiced by NMFS's actions

and NMFS should be held accountable. Moreover, that is just one example of the harm caused by NMFS's FOIA violations. In general, the Center uses information obtained from FOIA requests to educate the public and to initiate lawsuits. The longer NMFS takes to respond to a FOIA request, the longer it takes to pass on important information to the public or to cure violations of the law that are disclosed from the FOIA response. Despite NMFS's conclusory statement that its delayed actions should have no consequences, the harm to the Center is significant, and NMFS should be held liable. Again, NMFS has provided no evidence to suggest that its failure to timely respond to the Center's requests and appeals will abate, and therefore, this Court should order NMFS to timely respond to the Center's future FOIA requests.

### III. Conclusion

For the foregoing reasons, the Court should grant Plaintiff's Cross Motion for Summary Judgment and deny Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment.

Dated: November 29, 2005

Respectfully submitted,

*/s/ Justin Augustine*

Brent Plater (DC Bar No. 486505)
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
bplater@biologicaldiversity.org

Justin Augustine (CA Bar No. 235561)
*Pro hac vice*

CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
jaugustine@biologicaldiversity.org

Attorneys for Plaintiff