# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, )<br><br>Plaintiff, )<br><br>v. )<br><br>CARLOS GUTIERREZ, )<br><br>Secretary, Department of Commerce, *et al.*, )<br><br>Defendants. ) | Civil Action No. 05-1045 (RMC) |

## <u>MEMORANDUM OPINION</u>

The Center for Biological Diversity ("Center"), a nonprofit corporation that endeavors to protect imperiled species and their habitats, submitted three requests to the National Marine Fisheries Service ("NMFS")[1] for information about three coral species for which the Center had petitioned for protection as endangered species. NMFS released some documents and withheld or redacted others. The Center sues under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that NMFS acted too slowly and withheld information it should have released.

In the meantime, NMFS completed its study of the coral species and concluded that two of the species for which the Center petitioned, *Acropora palmata* (Elkhorn Coral) and *A. cervicornis* (Staghorn Coral), warranted listing as threatened species. A proposed rule to that effect

---

[1] NMFS is a component of the National Oceanic and Atmospheric Administration ("NOAA"), which in turn is a component of the Department of Commerce, whose Secretary, Carlos Gutierrez, is named as a Defendant in his official capacity. Also named as Defendants are NMSS itself and its Assistant Administrator for Fisheries, William T. Hogarth.

was published in the Federal Register on May 9, 2005.[2]  Success on its petition to list these species

as endangered has not, however, mooted the Center's suit.  Indeed, its goal here is broader:  The

Center hopes the requested documents will lend insight into NMFS's decisionmaking process, so

that it might more effectively respond to future NMFS actions.  *See* Am. Compl. ¶¶ 21, 51.

 NMFS's motion to dismiss, and the parties' cross-motions for summary judgment,

are fully briefed and ripe for decision.  As explained below, the Court will grant NMFS's motion to

dismiss, and will grant in part and deny without prejudice in part its motion for summary judgment.

The Court will deny without prejudice the Center's motion for summary judgment.

## I. BACKGROUND

The Center submitted a formal administrative petition to NMFS on March 3, 2004,

seeking to protect Elkhorn Coral, Staghorn Coral, and *A. prolifera* (Fused-Staghorn Coral) under the

Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544.  Am. Compl. ¶ 47.  On June 23, 2004,

NMFS announced that listing the coral as endangered may be warranted.  *Id.* ¶ 48.  As part of its

review, NMFS solicited public comments.  The comment period ended on August 23, 2004.

### A. Request 557

To obtain copies of the public comments, the Center submitted a FOIA request to

NMFS on August 27, 2004.  NMFS labeled this request FOIA Request #2004-00557 ("Request

557").  By letter dated October 15, 2004, and received on October 22, 2004, *see* Am. Compl. ¶ 54,

NMFS released 223 pages of records but redacted contact information from three of the comments

received electronically, including one submitted by the Center itself.  *See* Defs.' Mot. Ex. C.  NMFS

---

[2]  *See* 70 Fed. Reg. 24,359.  The coral which are the focus of the Center's interest do not play
a role in the instant dispute; the Court mentions the NMFS determination immediately so as not to
keep the reader in suspense.

invoked FOIA Exemption 6 to justify the redactions.[3]

The Center appealed NMFS's decision to redact contact information from the three emails, arguing that Exemption 6 "does not provide authority to withhold the contact information of individuals who submitted public comments." Defs.' Mot. Ex. C (emphasis deleted). Its appeal, submitted electronically, was received by NMFS on November 15, 2004, at 5:12 p.m. Eastern Time. *Id.* Under an amended regulation published by the Department of Commerce on August 12, 2004, a FOIA requester "may file a written appeal or an electronic appeal, which *must be received* by the Office of General Counsel during normal business hours (*8:30 a.m. to 5 p.m., Eastern Time*, Monday through Friday) within thirty calendar days of the date of the written denial . . . . Written or electronic appeals arriving after normal business hours will be deemed received on the next normal business day." 15 C.F.R. § 4.10(a) (emphasis added).[4]  Because the Center's appeal was received at 5:12 p.m., it was deemed filed on the next business day and was denied as untimely.

**B. Request 593**

The Center filed two further FOIA requests on October 1, 2004,[5] which the Court refers to as Requests 593 and 594. Request 593 sought certain documents related to Carribean Acroporids from the files of Mrs. Jennifer Ann Moore (née Jacukiewicz). In response to Request 593, on January 9, 2005, NMFS released 397 pages of records and withheld 16 documents in whole

---

[3] Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[4] Prior to August 12, 2004, the FOIA regulations for the Department of Commerce required "a written appeal . . . received . . . within thirty calendar days" without reference to filing an electronic appeal. See 15 C.F.R. § 4.10(a) as it existed prior to August 12, 2004.

[5] Although these requests were dated October 1, 2004, they were received on September 30, 2004. Smith Decl. ¶¶ 4, 9. This discrepancy makes no difference here.

or in part under FOIA Exemption 5, the deliberative process privilege.[6]  The Center appealed this decision on February 16, 2005.  On July 8, 2005, NMFS responded to the appeal of Request 593 by releasing one additional document in full and portions of two additional documents.  It continued to withhold or redact the 15 remaining documents, one on the basis of attorney-client privilege.

Of those documents withheld entirely:

a.  Document #1 is a September 23, 2003, email from Stephania Bolden, a NOAA employee, to Cheryl Scannell, a NOAA attorney, with copies to other NOAA employees.  The email constituted a "request for legal advice from a NMFS researcher to a NOAA attorney."  Defs.' Mot. Ex. B, *Vaughn*[7] Index ("Index") at 1.

b.  Document #2 is a May 25, 2001 [sic], four-page draft headed, "Assessment of Endangered Species Act (ESA) Candidate Acroporid Coral Populations in U.S. Waters," written by an unidentified NOAA employee, with handwritten notes on the first page.  It is described as "preliminary recommendations by NOAA employees for NOAA decisionmakers."  NMFS asserts that the factual information in the document is also protected as part of the deliberative process because it was "selectively chosen as part of the decisionmaking process" and constitutes "an integral part of the deliberations undertaken by Commerce in determining how to structure the ESA assessment of candidate acroporid populations."  According to NMFS, the document advised "on

---

[6] Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

[7] *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  "The [*Vaughn*] 'Index' usually consists of a detailed affidavit [submitted by a government agency] with the purpose of 'permit[ting] the court system [to] effectively and efficiently evaluate the factual nature of disputed information.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149 n.2 (quoting *Vaughn*, 484 F.2d at 826).  The *Vaughn* Index is Exhibit B to the Defendants' Motion.

how NOAA should go about developing and implementing a program to inventory, assess, and monitor U.S. coral reef ecosystems." *Id.* at 2.

c.  Document #3 is a November 12, 2003, one-page draft titled "Overview—Atlantic *Acropora* Status Review Suggested Format," written by an unidentified NOAA employee, attached to an email from Andy Bruckner to Mrs. Moore.  It "consists of preliminary recommendations . . . which were part of Commerce's deliberations concerning decisions on how to structure the Atlantic *Acropora* status review and what should be included in the process." *Id.* at 2-3.

d.  Document #4, dated December 15, 2003, is an 18-page attachment to an email from Stephania Bolden to Andy Bruckner, and is a draft titled "Atlantic Acropora Status Review" written by an unidentified NOAA employee.  It is described as "preliminary recommendations by NOAA employees for NOAA decisionmakers, which were part of Commerce's deliberations concerning decisions on ESA listings." *Id.* at 3.

e.  Document #5 is undated and has no title.  It consists of 36 pages and was described as a "status review skeleton" in the cover email dated February 11, 2004, from Stephania Bolden to Mrs. Moore and other NMFS employees and consultants.  It is described as "preliminary recommendations by NOAA employees and consultants for NOAA decisionmakers, who were part of NOAA's deliberations concerning decisions on ESA listings." *Id.* at 4.  It was designed as "an integral part of the deliberations undertaken by Commerce in determining how to structure the ESA assessment of candidate acroporid populations." *Id.* at 4-5.

The declaration of Beverly J. Smith, an NMFS analyst, further states that Documents #2-5 "consist[] of internal, NOAA predecisional deliberative opinions and recommendations concerning whether, *inter alia*, Staghorn coral, Elkhorn coral, and other coral species should be

designated as threatened or endangered species for placement on the Endangered Species list, how to structure the deliberations, what to take into account, and what should go into a final decision." Smith Decl. ¶ 8.

Of those documents withheld in part — all emails, some of which contained attachments — the Index provides two kinds of answers, depending on whether (i) the email merely communicated between NOAA employees, or (ii) non-NOAA consultants were copied on the email. This generic language (with the language referring to consultants in brackets) reads virtually identically for all responses:

> The withheld portions consist of preliminary recommendations by NOAA employees [and consultants] for NOAA decisionmakers, which were part of Commerce's deliberations concerning decisions on how to structure the Atlantic *Acropora* status review and what should be included in the process. [The consultants were providing opinions and recommendations to NOAA and had no personal stake in the outcome of the decisionmaking process or the final decision.] The withheld portions are predecisional and deliberative. Release would discourage open, frank discussions on how NOAA should go about developing and implementing a program to inventory, assess, and monitor U.S. coral reef ecosystems. The redacted portions are withheld under [the] (b)(5) deliberative process privilege and do not represent a final agency decision the matter contained therein.

*See, e.g.*, Index at 9. In one format or the other, this paragraph is used by NMFS to explain redactions from:

f.  Document #6, a one-page attachment to a September 26, 2003, email from Mrs. Moore to other NOAA employees and consultants, titled "Atlantic *Acropora* Biological Review Team Update Sheet." *Id.* at 5-6.

g.  Document #7, an August 20, 2003, two-page email from David Bernhart to Stephania Bolden. *Id.* at 6.

h.   Document #8, a October 6, 2003, one-page email from Mrs. Moore to Georgia Cranmore, a NOAA employee. *Id.* at 6-7.

i.   Document #9, a November 7, 2003, one-page email from Stephania Bolden to Mrs. Moore. *Id.* at 7.

j.   Document #10, a December 1, 2003, four-page email from Stephania Bolden to Mrs. Moore. *Id.* at 7-8.

k.   Document #11, a one-page email from Margaret Miller to Stephania Bolden and Andy Bruckner, dated December 1, 2003. *Id.* at 8-9.

l.   Document #12, a one-page email from Iliaca Balms to Stephania Bolden, dated December 10, 2003. *Id.* at 9.

m.   Document #13, a one-page email, dated December 11, 2003, from Stephania Bolden to J. Porter. *Id.* at 9-10.

n.   Document #14, a December 11, 2003, email from Stephania Bolden to Mrs. Moore, consisting of two pages. *Id.* at 10.

o.   Document #15, dated January 9, 2004, a one-page email from Jennifer Lee to Stephania Bolden. *Id.* at 11.

**C. Request 594**

Request 594 sought all documents received by NMFS concerning its selection of members for the Biological Review Team that evaluated the petition to place the three coral species on the endangered species list.  NMFS responded on October 19, 2004, by releasing all responsive records — 16 pages — in their entirety.  Smith Decl. ¶ 11.  The Center appealed on the basis that the search was inadequate. *Id.*  Over a period of months, as "new information became available to

NMFS as to which offices and employees might possess responsive records," *id.* ¶ 12, NMFS

identified and released additional records to the Center.  Of 28 additional pages of information so

located, NOAA released 23 full pages on January 19, 2005.  *Id.* ¶ 12(c); Am. Compl. ¶ 72.  NMFS

finally responded to the appeal on July 29, 2005, releasing an additional 15 pages.  Of those, 12

pages (comprising 7 documents) were partially withheld on the following basis:

> The withheld portions consist of preliminary recommendations by
> NOAA employees for NOAA decisionmakers, which were part of
> Commerce's deliberations concerning decisions on how to select and
> establish a Biological Review Team (BRT) to recommend potential
> listing under the Endangered Species Act as part of Commerce's
> status review.   The withheld portions are predecisional and
> deliberative.  Release would discourage open, frank discussions on
> how NOAA should go about developing and implementing a BRT to
> formulate recommendations for a Commerce status review on species
> of coral.  The redacted portions are withheld under [the] (b)(5)
> deliberative process privilege and do not represent a final agency
> decision on the matter contained therein.

Index at 11-16.  Specifically, this explanation is proffered for:

a.  Document #16, a June 24, 2004, two-page email from Stephania Bolden to

Margaret Miller.  *Id.* at 11-12.

b.  Document #17, an August 7, 2003, two-page email from Stephania Bolden to

Marta Nammack.  *Id.* at 12.

c.  Document #18, an August 27, 2003, one-page email from Stephania Bolden to

Mrs. Moore (two paragraphs of which were also withheld as nonresponsive).  *Id.* at 12-13.

d.  Document #19, a March 15, 2004, one-page email from Stephania Bolden to Mrs.

Moore and other NOAA employees, federal government employees, and consultants.  *Id.* at 13-14.

e.  Document #20, an April 28, 2004, two-page email from Stephania Bolden to Mrs. Moore and other NOAA employees, federal government employees, and consultants.[8]  *Id.* at 14-15.

f.  Document #21, a May 3, 2004, two-page email from David Bernhart to Andy Bruckner and Mrs. Moore.  *Id.* at 15.

g.  Document #22, a May 12, 2004, two-page email from Andy Bruckner to Stephania Bolden.  *Id.* at 15-16.

**D.  This Action**

The Center filed a Complaint on May 24, 2005, and a First Amended Complaint on August 5, 2005.  Count I alleges that NMFS improperly relied on Exemption 6 in redacting commenters' contact information in response to Request 557.  Counts II and III allege that NMFS has failed to establish that Exemption 5 applies to the withheld or redacted documents identified as responsive to Requests 593 and 594.  Counts IV and V allege that NMFS delays in processing the Center's FOIA requests and appeals are unreasonable, and constitute a pattern and practice of unresponsiveness in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), (2)(A).

## II. LEGAL STANDARDS

**A. Motion to Dismiss**

The Government moves to dismiss Count I pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, a plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction.  *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63

---

[8]  The Index adds, as to Documents #19 and #20, that the consultants were providing opinions and recommendations and had no personal interest in the outcomes.  *Id.*

(D.D.C. 2002); *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

Although not invoked by the Government, Federal Rule of Civil Procedure 12(b)(6) is also relevant in this context. A Rule 12(b)(6) motion challenges the adequacy of a complaint on its face, testing whether the plaintiffs have properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff need not plead the elements of a *prima facie* case in the complaint. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

**B. Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also*

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Liberty Lobby*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Liberty Lobby*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

NMFS argues that the Court lacks jurisdiction over Request 557 because the Center, by filing a late appeal, failed to exhaust its administrative remedies. As to Requests 593 and 594, NMFS has submitted a *Vaughn* Index ("Index") and the Declaration of Beverly J. Smith ("Smith Decl.") to explain its reliance on Exemption 5 in withholding all or parts of documents responsive to the Center's FOIA requests. The Center claims that its appeal of Request 557 was timely filed, and argues that NMFS has failed to provide suitable information, in its *Vaughn* Index or otherwise, from which the Center or the Court can determine whether its reliance on Exemption 5 is legitimate.

### A. Request 557

"[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA, which means that a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004). "Although exhaustion of a FOIA request is not jurisdictional because the FOIA does not unequivocally make it so, still as a jurisprudential doctrine, failure to exhaust precludes judicial review if [1] the purposes of exhaustion and [2] the particular administrative scheme support such a bar." *Id.* at 677 (citations and internal quotation marks omitted).[9] The Center argues that its appeal was timely and, even if not, that the purposes of exhaustion would not be served by barring its claim.

---

[9] As to the latter prong, it is settled that "FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Hidalgo v. FBI*, 344 F.3d 1258, 1259 (D.C. Cir. 2003); *see also Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).

### 1. Timeliness

Without doubt, the Department of Commerce adopted a regulation on August 12, 2004, that specifically allowed the filing of electronic appeals but required that all appeals — electronic or written — be received no later than 5 p.m. Eastern Time on the 30th day after issuance of an initial FOIA determination. 15 C.F.R. § 4.10(a); 69 Fed. Reg. 49,783, 49,784 (Aug. 12, 2004). Any "electronic appeal arriving after normal business hours will be deemed received on the next normal business day." 15 C.F.R. § 4.10(a). The Center's appeal arrived electronically at 5:12 p.m. Eastern Time on the 30th day.[10] Accordingly, it was treated as if it were filed on the next business day and denied as untimely. NMFS argues that this late filing constitutes a failure to exhaust administrative remedies, and moves to dismiss for lack of subject matter jurisdiction.

The Center advances an argument only a lawyer could love: "The regulation states that the appeal must be received by 5 p.m. Eastern time, not 5:00 PM Eastern time. By failing to provide a specific minute, such ambiguity should be resolved in the Center's favor." Pl.'s Opp'n at 11-12 (footnote omitted). The Center goes on to suggest that if the Court "rounds down, as should be the case, 5:12 falls within NMFS'[s] 5 p.m. requirement, and therefore the appeal was not even 12 minutes late." *Id.* at 12 n.2. The Court is not persuaded. In this context, at least, "5 p.m." and "5:00 PM" have the same meaning and are interchangeable, even if the latter is slightly more specific. There is no ambiguity to interpret.

---

[10] As the Center concedes, the 30-day period is calculated from October 15, 2004 — the date NMFS responded to Request 557, not the date that the Center received that response. Am. Compl. ¶ 54. That first day, however, is excluded from the computation. Fed. R. Civ. P. 6(a) ("[T]he day of the act . . . from which the designated period of time begins to run shall not be included."). The 30th day, a Sunday, is also excluded. *Id.* ("The last day of the period so computed shall be included, unless it is . . . a Sunday, . . . in which event the period runs until the end of the next day . . . ."). Accordingly, as all parties agree, the 30th day for Rule 6(a) purposes is November 15, 2004.

### 2. Purposes of Exhaustion

The Center next relies on *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004), to support its assertion that "just because an agency claims a FOIA appeal is late, as NMFS does here, does not preclude subject matter jurisdiction nor does it prevent the court from deciding the merits of the appeal." Pl.'s Reply at 2-3. Although the Center correctly observes that under FOIA exhaustion is not jurisdictional but prudential, and that under *Wilbur* a late agency appeal does not necessarily preclude a court from reaching the merits, its argument founders on the suggestion that the ends of exhaustion have been achieved here despite its tardy filing.

In *Wilbur*, the plaintiff's appeal of the CIA's denial of his FOIA request was filed more than four years after the deadline specified by the applicable regulation. *Wilbur*, 355 F.3d at 676. "Nevertheless, the CIA accepted the appeal, processed it, reviewed the initial determination and issued a final decision upholding the agency's prior determination." *Id.* at 677. "Under these circumstances," the *Wilbur* court held, "the policies underlying the exhaustion requirement ha[d] been served." *Id.* at 677. The circumstances of the instant matter differ from *Wilbur* in important respects. First, of course, NMFS did not accept the Center's tardy appeal; thus, it has had no occasion to consider the very issue that the Center raises here: whether NMFS improperly invoked FOIA Exemption 6 to redact materials it released in response to Request 557. *See Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003). The exhaustion requirement exists to provide the agency "'an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Wilbur*, 355 F.3d at 677 (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). To ignore that requirement here would frustrate this policy by "cut[ting] off the agency's power to correct or rethink initial judgments or errors." *Hidalgo*, 344 F.3d at 1260

(quoting *Oglesby*, 920 F.2d at 64).

      The Center offers no persuasive reason to avoid this prudential bar. It complains that the regulation requiring all appeals to be received by 5 p.m. was established without notice and comment and was published on August 12, 2004, "mere days" before the Center submitted Request 557 on August 27, 2004.[11] But the Center filed its appeal on November 15, 2006 — more than two months after the regulation was changed. That is the relevant time period, not the "mere days" between the publishing of the regulations and the submission of Request 557. The Center also objects that the October 15, 2004, letter from NMFS responding to Request 557 failed to mention the 5 p.m. Eastern Time deadline explicitly, referencing only the 30-day appeal period. Pl.'s Opp'n at 12 n.3; Pl.'s Reply at 3. But the letter specifically advised the Center that its appeal could be filed electronically, and drew the Center's attention to the regulation by providing a specific citation to "Title 15, Code of Federal Regulations, Section 4.10(a)." Def.'s Mot. Ex. C at 2. Since the Center obviously knew that electronic filing was now allowed, the Court infers that the Center knew that a regulatory change had been made and simply failed to check the regulation to ascertain the complete scope of the change.

      Had the Center's appeal actually been filed mere days after NMFS published its new timeliness requirements for FOIA appeals, the Court might be more sympathetic. But under these circumstances, it finds that NMFS set a legitimate deadline, the Center failed to meet that deadline, and NMFS simply respected its regulations and declined to review the appeal. To now ignore that deadline would frustrate the purposes of exhaustion. The Court will therefore grant NMFS's motion

---

[11] Before August 12, 2004, no similar requirement existed that appeals be received by a time certain on the due date. *Compare* 69 Fed. Reg. 49,783, 49,784 (Aug. 12, 2004) *with* 66 Fed. Reg. 65,631, 65,636 (Dec. 20, 2001).

to dismiss Count I for failure to exhaust administrative remedies, but pursuant to Rule 12(b)(6), rather than Rule 12(b)(1).  *Hidalgo*, 344 F.3d at 1260.[12]

## B. Adequacy of the *Vaughn* Index

"An agency invoking a FOIA exemption bears the burden of establishing its right to withhold evidence from the public."  *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (1987) (internal quotation marks and brackets omitted).  To assert successfully the deliberative process privilege in Exemption 5, an agency must establish two prerequisites: "[1] that the document is 'predecisional' — whether it was generated *before* the adoption of an agency policy — and [2] [that] the document is 'deliberative' — whether it reflects the give-and-take of the consultative process."  *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  Moreover, it "must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process."  *Id.* at 585-86 (quoting *Coastal States*, 617 F.2d at 868).  Generally, providing only "each document's issue date, its author and intended recipient, and the briefest of references to its subject matter . . . will not do."  *Id.* at 585.

### 1. Request 593

The Center attacks the boilerplate nature of NMFS's explanations for its application of Exemption 5 for all documents withheld in whole or in part that were requested in Request 593. The Court agrees.  The nature of the explanations in the *Vaughn* Index are so imprecise that they offer no way for the Court independently to assess NMFS's reliance on Exemption 5.  *See Oglesby*, 79 F.3d at 1180-81 (requiring agencies to itemize each document and explain in detail the connection

---

[12]    Accordingly, the Court does not reach the merits of the Center's challenge to NMFS's reliance on Exemption 6.  *See Hidalgo*, 344 F.3d at 1258 n.5.

between the information withheld and the exemption claimed); *Senate of Puerto Rico*, 823 F.2d at 584 (requiring an agency to supply enough information "so that a reviewing court can sensibly determine whether each invocation of deliberative process privilege . . . is properly grounded"); *Judicial Watch Inc. v. USPS*, 297 F. Supp. 2d 252, 260 (D.D.C. 2004) ("[A]n agency's affidavit must correlate facts in or about each withheld document with the elements of the privilege.")

NMFS's repeated refrain that the withheld documents are "predecisional and deliberative" "preliminary recommendations" that "would discourage open, frank discussions" and "do not represent a final agency decision" is nothing more than perfunctory legalese. Such "conclusory assertions of privilege will not suffice to carry [an] agency's burden." *Senate of Puerto Rico*, 823 F.2d at 585 (internal quotation marks omitted). For the documents withheld in their entirety (Documents #1-5), NMFS references little more than their titles, stating vaguely that each discusses "how to structure the ESA assessment of candidate acroporid populations" and "how the NOAA should go about developing a program to inventory, assess, and monitor coral reef ecosystems." Index at 2-4. For those withheld in part (Documents #6-15), the Index is even more spare, generally describing each as an "e-mail" without providing further context. This is insufficient to establish "the *role* played by the documents in issue in the course of [the deliberative] process." *Senate of Puerto Rico*, 823 F.2d at 585-86 (emphasis added). Likewise, that the Index refers to these documents as drafts solves little, for although the deliberative process privilege surely extends to drafts, they are not per se exempt. *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257-58 (D.C. Cir. 1982); *Judicial Watch*, 297 F. Supp. 2d at 261.

Moreover, although the Index names the senders and recipients of each document, neither it nor any of NMFS's other submissions clarifies the positions of those players in the agency

-17-

hierarchy, leaving it impossible for the Court to determine whether the withheld documents are legitimately "part of a clear 'process' leading to a final decision on the issue." *Coastal States*, 617 F.2d at 868. Indeed, it seems passing strange that NMFS would remain in a "preliminary" stage for deciding how "to structure the ESA assessment" of the coral from May 2003 to February 2004, when NMFS announced in June 2004 that listing the coral as endangered may be warranted and provided a short comment period.

Finally, at least for the documents withheld in their entirety, NMFS has failed to establish that they contain no segregable information that might be disclosed. FOIA's focus "is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Kimberlin v. U.S. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998) (quoting *Mead Data Cent. Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). "*Vaughn* itself requires agencies to specify in detail which portions of the document are disclosable and which are allegedly exempt. A submission that does not do that does not even qualify as a *Vaughn* index." *Id.* (citations and internal quotation marks omitted). The most conspicuous failures in this regard are Documents #4 and #5, an 18-page "status review" and a 36-page "status review skeleton" (whatever that means). But there is no attempt at a segregability analysis for *any* document, whether withheld or redacted. *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000) (remanding for segregability findings on redacted documents). Raising the issue *sua sponte*, as it must, the Court reminds NMFS that the "segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption." *Id.*; *see also Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) ("It has long been

a rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").

To be clear, the Court does *not* rule that any of the documents or portions of documents withheld in response to Request 593 are ineligible for protection under Exemption 5; rather, it finds the *Vaughn* Index inadequate for making that determination. *See Senate of Puerto Rico*, 823 F.2d at 587. For this reason, both NMFS's and the Center's motions for summary judgment on Count II will be denied without prejudice.

### 2. Request 594

The Center also challenges NMFS's explanations for its reliance on Exemption 5 for withholding portions of seven documents (Documents #16-22) released in response to Request 594. With respect to these documents, each of which is an email sent between August 7, 2003, and June 24, 2004, the Index is even less precise. Omitting most of the boilerplate, they are invariably described as containing "preliminary recommendations . . . on how to select and establish a Biological Review Team." Index at 11-16; Smith Decl. ¶¶ 16-22. For the reasons explained above for Request 593, NMFS's *Vaughn* Index is also insufficient as to Request 594.

The parties' cross-motions for summary judgment on Count III will likewise be denied without prejudice.

### C. Timeliness of NMFS Responses to Requests and Appeals

The Center lastly assails as unreasonable NMFS's delays in processing its FOIA requests and appeals, contending that they establish a pattern and practice of unresponsiveness in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), (2)(A). The Center perceives the necessary pattern because the response to Request 557 "was almost two weeks late," Request 593

was answered "fifty days late," and the answer to Request 594, "while it was received within 20 days, was inadequate because it failed to provide many responsive documents." Pl.'s Reply at 8. "[E]ven more egregious," it argues, was the handling of the Center's appeals, which were 98 working days late for Request 593 and 173 working days late for Request 594. *Id.*

### 1. Mootness

As an initial matter, NMFS suggests that the Center's untimeliness claims have been mooted by NMFS's subsequent disclosure of all nonexempt responsive material in its possession. Defs.' Mot. at 19-20. As the Court has already indicated, however, NMFS's *Vaughn* Index is not adequate for the Court to verify that assertion. Moreover, the law of the Circuit is clear:

> [E]ven though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future. . . .
>
> . . . So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit.

*Payne Enterprises Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). Accordingly, the Court rejects NMFS's argument that Counts IV and V are moot.

### 2. Timeliness

FOIA recognizes that agencies may take longer than the statutory twenty days to answer requests or rule on appeals when "exceptional circumstances exist and . . . the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). Exceptional circumstances exist when an agency "is deluged with a volume of requests for information vastly in

excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976). Exceptional circumstances do not include delays stemming from "a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). "Reasonable progress" is affected, of course, by the number of requests for information and the number of appeals, the agency's serious attention to its FOIA obligations, and the budget allocated by Congress. When agencies are making good-faith efforts and exercising due diligence in processing requests and appeals on a first-in, first-out basis, courts generally find that exceptional circumstances excuse any delays. *See Open America*, 547 F.2d at 616; *Ohaegbu v. FBI*, 936 F. Supp. 7, 8 (D.D.C. 1996).

The Court finds that no pattern or practice has been established on this record. NMFS was reasonably diligent in handling the Center's requests, given the number of FOIA requests received in 2005 (213), the number being processed at the same time when Requests 593 and 594 were filed (24), and its repeated release of responsive documents as they were identified. Despite its full plate, NMFS responded to the Center's most recent request, Request 594, within 20 days; the fact that further documents were later released as they were identified as responsive to that request demonstrates not dilatory conduct but the serious attention NMFS gives to its FOIA obligations.

Due to the increased volume of FOIA requests received by NMFS and the agency's good-faith efforts in completing such requests, NMFS meets the *Open America* exceptional circumstance standard, rendering the delay in the processing of FOIA requests acceptable.

**IV. CONCLUSION**

Because the Center failed to exhaust its administrative remedies by filing a timely appeal of Request 557, NMFS's motion to dismiss Count I will be granted.  Because the *Vaughn* Index and Smith Declaration fail to describe adequately the documents withheld in whole or in part in response to Requests 593 and 594, the parties' motions for summary judgment will be denied without prejudice as to Counts II and III.  And because the Center has failed to establish a pattern or practice of failing to handle FOIA requests and appeals without diligence or good faith, summary judgment will be granted to NMFS on Counts IV and V.

A memorializing order accompanies this memorandum opinion.


Date: August 10, 2006                                  _____/s/_____
                                                       ROSEMARY M. COLLYER
                                                       United States District Judge